FEDERAL LAND BANK OF COLUMBIA *v.* SHINGLER, executrix, *et al.*

No. 8434.   FEBRUARY 12, 1932.   REHEARING DENIED FEBRUARY 27, 1932.

*N. L. Stapleton, Harry D. Reed,* and *F. P. McGowan,* for plaintiff.

*C. E. Hay, J. T. Goree,* and *J. A. Drake,* for defendants.

RUSSELL, C. J.   The Federal Land Bank of Columbia, chartered under the act of Congress known as the Federal farm-loan act, made a loan to M. M. Hall of $10,000 on a tract of land in Miller County, which Hall had purchased from Joe M. Shingler, the loan being evidenced by a note and secured by deed with power of sale conveying the land.   The note was indorsed by the Miller County National Farm Loan Association, also chartered under the Federal farm-loan act, of which Hall became a member.   Shortly thereafter Hall executed to Shingler a series of notes in excess of $10,000; also a second deed with power of sale to the same property.   These notes and this deed were indorsed by Shingler to the Bank of Donalsonville, but the transfer was never recorded, and the Federal Land Bank of Columbia had no notice, actual or constructive, of the transfer of these papers to the Bank of Donalsonville until after they had been transferred back to Shingler.

In the year 1924 Hall defaulted in the payment of his obligations both to the land bank and to Shingler, and agreed verbally to reconvey the land to Shingler in consideration of the assumption by Shingler of the land-bank loan and the satisfaction of Hall's indebtedness to Shingler. In November, 1924, Shingler made written application to the Federal Land Bank of Columbia for permission to assume the note and mortgage of M. M. Hall with the Federal Land Bank of Columbia, and also the stock interest of M. M. Hall in the Miller County Farm Loan Association. This application recites that Shingler "agrees to and does assume all of the terms, covenants, and conditions of said loan, and obligates himself fully and faithfully to perform the same in accordance with the true intent and purpose thereof, as contained and evidenced by said note and mortgage or loan deed and the Federal farm-loan act," and recites that the purchase-price is "assumption of mortgage to the bank, $10,000; assumption of mortgage to Joe M. Shingler, $8,000; total purchase-price, $18,000." This application was signed by Shingler, and following his signature appeared the following entry signed by M. M. Hall: "I consent to the assumption, and have transferred my receipt for stock in the association, to the applicant." Upon this application was an entry by the secretary-treasurer of the Miller County National Farm Loan Association, certifying that the board of directors of said association had approved said application, and that Shingler had been duly admitted to membership therein. This application for assumption was approved and consented to by the Federal Land Bank of Columbia on December 9, 1924, and the Miller County National Farm Loan Association was so notified on December 9, 1924.

Hall moved to Florida about December 1, 1924. Shingler took possession of the land in question about January 1, 1925. On January 13, 1925, he paid to the land bank the installment on the Hall loan which had matured on November 1, 1924, and proceeded to have his tenant plant a crop on the property. Subsequently it developed that there was an outstanding execution in favor of the Virginia-Carolina Chemical Company against Hall, for approximately $1200; and in April, 1925, Shingler had the Bank of Donalsonville retransfer to him the notes and security deed executed by Hall to Shingler, and proceeded to advertise and sell the property under the power of sale contained in the security deed,

the sale being made subject to the lien of the land bank, and at the sale Shingler bought in the land. On April 1, 1925, Hall was adjudged a bankrupt, upon his voluntary petition in the United States court at Jacksonville, Florida, and did not list or schedule any stock in the Miller County National Farm Loan Association, or the property described in the security deeds above referred to. On April 16, 1925, Shingler sold his interest in the Hall property to Clarence Weaver. On February 21, 1926, Weaver sold his interest in this land to Virginia B. Edwards, and she made formal application to the land bank for permission to assume the note and mortgage and stock interest of Shingler in the Miller County National Farm Loan Association. On this application appears an entry signed by Shingler, as follows: "I consent to the assumption, and have transferred my receipt for stock in the association to the applicant." This application was approved by the Miller County National Farm Loan Association, and by the land bank, but without releasing Shingler from liability. Mrs. Edwards, Shingler, and the Miller County Association were notified of the action of the land bank. Mrs. Edwards defaulted in the payment of the loan. In the meantime it appeared that the original receipt for stock issued to M. M. Hall by the Miller County National Farm Loan Association had been burned when his dwelling was destroyed by fire prior to the date of application of Shingler for permission to assume the loan, and on that account the stock of Hall in the association was never transferred to Shingler on the books of the association, but the land bank had no knowledge of this fact until about the time this suit was filed. Before that time the Miller County National Farm Loan Association was succeeded by the Tri-County National Farm Loan Association. Suit was filed in the superior court of Seminole County, by the Federal Land Bank of Columbia, against Maude Shingler as executrix of the will of Joe M. Shingler, and against Tri-County National Farm Loan Association as indorser, asking for a general judgment against said defendants, and a special judgment against the land involved. The case was tried before the judge without the intervention of a jury, upon an agreed statement of facts, the substance of which is set out above, and the testimony by depositions of M. M. Hall, which did not contradict anything material contained in the agreed statement, but was corroborative thereof.

Judgment was rendered for the defendants, which judgment was affirmed by the Court of Appeals. *Federal Land Bank of Columbia* v. *Shingler*, 43 *Ga. App.* 92 (157 S. E. 911). Upon application of the Federal Land Bank of Columbia, this court, being of the opinion that the case presented questions of gravity and importance not specifically referred to or expressly adjudicated in the opinion of the Court of Appeals, granted the writ of certiorari.

The controlling question in this case is whether Joseph M. Shingler assumed the obligation of Hall to pay Hall's indebtedness to the Federal Land Bank. All of the other questions are incidental to and revolve around this question. Of course, if Shingler did not obligate himself to pay the debt, there can be no liability upon his executrix; and, vice versa, if he did obligate himself to pay the indebtedness of Hall by assuming it as his own, his liability to perform that obligation was transmitted to his executrix, standing in his shoes, as a matter of law. The defendant has presented numerous defenses. We may not rule upon all of them, for the reason that we consider some of the reasons suggested in defense of the suit as irrelevant to the real issue in the case; but we shall endeavor to mention all of them in our discussion of the important issues which bear upon the main question. The defendant contends, in the first place, that there was no assumption by Shingler of Hall's indebtedness by the contract entered into between Hall and the Federal Land Bank, by which Hall obtained a loan of $10,000 and executed the security deed; that the writing signed by him was only an offer to assume the obligation, which was never accepted by the Federal Land Bank; that the negotiations with reference to his assuming the debt were never closed or became a contract, by reason of the fact that Hall was never released from his obligation to the bank, though it was agreed between Hall and Shingler that Hall should be released; and that, the bank having declined to release Hall, Shingler was under no obligation to discharge Hall's liability. Under the agreed statement of facts, and in view of the pleadings, the position of the defendant upon this point can not be sustained. It is admitted that on November 29, 1924, Joe M. Shingler made the following application "for consent to assumption of loan": The undersigned hereby applies for permission to assume the note

and mortgage and also the stock interest of M. M. Hall, and for membership in the Miller County National Farm Loan Association, and agrees to and does assume all of the terms, covenants, and conditions of the said loan, and obligates himself fully and faithfully to perform the same in accordance with the true intent and purpose thereof, as contained in and evidenced by said note and mortgage or loan deed. The applicant states that the value of the land owned is $30,000, and that the total amount of indebtedness, called "purchase-price," is $18,000; and the first item mentioned in the purchase-price is "assumption of mortgage to the bank, $10,000." Written upon this application, immediately following the signature "Joe M. Shingler, Applicant," appears this entry: "I consent to the assumption, and have transferred my receipt for stock in the association to the applicant. M. M. Hall, Borrower." This must be treated as an application to the Federal Land Bank by Shingler to assume the obligation of the note and security deed, and for the bank's sanction of the written transfer of Hall indorsed upon Shingler's application, by which he acquired the stock interest of M. M. Hall, as well as an application for membership in the local farm loan association. The portion of the permission sought as above stated (whereby Shingler would assume the debt of Hall and the obligation to pay it) was, as we shall point out, an essential prerequisite to Shingler's protecting whatever rights Shingler had in the land by virtue of his second security deed from Hall and the notes of Hall for the balance of the $10,123.33.

Ordinarily a third party does not have to obtain the consent of a creditor in order to assume the obligation of a debtor of this creditor. Generally the contract in such circumstances would be complete if B, as a third party, obligated himself to A to assume the payment of A's debt, and the creditor, C, not being a party thereto, would not be involved in any way in the contract. If B paid the debt to the creditor, he would discharge his obligation to A, and it would be immaterial to C, the creditor, which one of the two paid the debt, provided payment was made. Not so under the provisions of the Federal farm-loan act (12 U. S. C. A. c. 7, § 641 et seq.) Counsel for defendant in certiorari perceives the difference recognized by law between an ordinary case where a third party assumes payment of the debt of another and in which

the consent of the creditor is not necessarily an incident to such transaction, and the assumption of an indebtedness existing under the provisions of the Federal farm-loan act. In his brief it is said: "A condition precedent to the carrying out of the Shingler-Hall assumption plan was the obtaining of the full consent of both the Miller County National Farm Loan Association (later merged into the Tri-County National Farm Loan Association) and the Federal Land Bank of Columbia. The contemplated contract had to be a four-party contract or none at all. Hall and Shingler undertook to get the assent of the other parties necessary to such a plan before themselves doing anything toward giving it effect." Under a proper construction of the Federal farm-loan act, we do not agree with the statement that "the contemplated contract had to be a four-party contract or none at all," but it is very clear, as we have just stated, that it was absolutely essential that the Federal Land Bank of Columbia, as the payee and holder of the note and security deed, should permit and give its consent to Shingler's assumption of an undertaking to perform Hall's obligation.

This case seems to have been decided, both in the superior court and in the Court of Appeals, without particular reference to the provisions of the Federal farm-loan act, 12 U. S. C. A. c. 7, §§ 641-1012. The defendant proceeded upon the theory that there was no assumption by Shingler of the debt of Hall; that, no matter if Shingler did assume the debt of Hall, this imposed no personal liability upon Shingler, by reason of the fact that certain other stipulations, such as the release of Hall and the transfer of Hall's stock, were not complied with. In other words, the contention of Shingler's legal representative is that Shingler made an offer to assume Hall's place upon conditions which were not complied with, and that the effort to assume is still inchoate and of no binding effect upon the estate of Shingler. This contention was evidently sustained in both the superior court and the Court of Appeals. The contention of learned counsel for the defendant in certiorari, that the permission to assume Hall's obligation to the Federal land bank, which was asked by Shingler, was not fully and conclusively granted by the bank, because the bank, in accepting his offer, did not comply with certain conditions as to the release of Hall, is without merit in view of the agreed record. When the Federal Land Bank communicated to Shingler its con-

sent to his request to assume the loan of Hall, it was impossible for Shingler not to know that the bank, with the knowledge it possessed of the farm-loan act (imputed to the bank as a matter of general law), understood that Shingler had substituted himself in the place of Hall for all the purposes necessary and proper under the provisions of that law. Shingler knew he had to become a stockholder, and that the papers showed this condition had already been complied with by the transfer to him of Hall's stock, if the stock was an article of any value. He knew from the papers sent to him that certain things would have to be done by Hall which could not be done by the bank, such as the payment of the fees and the furnishing of the Seminole County abstract. Shingler therefore became bound by the understanding of the bank. Section 4267 of the Code of 1910 declares: "The intention of the parties may differ among themselves. In such case, the meaning placed on the contract by one party, and known to be thus understood by the other party, at the time, shall be held as the true meaning." We are asked by learned counsel to construe Shingler's subsequent conduct in the view that everything done by him after receiving notice from the bank that he had been accepted in lieu of Hall was only in the protection of his own interest, as if he had never made the request of the bank. To do this would be to nullify section 4267 of the Code, which treats all of the acts of Shingler, after his receipt of the Federal land bank's consent in writing, as having been done in carrying out the contractual relation as he knew it was understood by the bank. From his application it is plain that Shingler knew the liabilities he would assume and that the bank must impose. Even if no knowledge of the law be imputable, Shingler knew how his application was "understood by the other party." In accordance with his knowledge that the bank understood that he desired to avail himself of all the benefits of the farm-loan act, there arose a contractual obligation to be bound by that act just as Hall had been bound.

At the inception of a consideration of this case, it must be borne in mind that the entire transaction now under review is within the purview of Federal laws; that whatever was done by any party was done and intended to be done with reference, not to State law, but with reference to a definite Federal law, within the scope of

that Federal law; and that that authority and power as to the subject-matter is paramount. This court has not heretofore had before it for adjudication any question in which any phase of the Federal farm-loan act was involved. We have been able to find but few decisions from other jurisdictions construing any portion of that act, though a number of opinions have from time to time been rendered by the attorney-general of the United States. However, it is an established principle that parties dealing upon a subject controlled by a Federal law are presumed to intend to contract with reference to the provisions of that law. Especially would this be true in Georgia, under the Civil Code (1910), § 1, which provides: "The laws of general operation in this State are— 1. As the supreme law: The Constitution of the United States, the laws of the United States in pursuance thereof," etc., wherein Federal laws are given preference and priority over the laws of the State which may conflict with the Federal legislation. In regard to the law now under consideration, the same rule applies in other jurisdictions. In Scott *v.* Federal Land Bank, (Ind. App.), 175 N. E. 16 (2), 17, it was held that a contract concerning a matter exclusively within national cognizance and regulated by national law is presumably entered into with reference to that law, not State law; and that a Federal land bank could not be compelled to transfer stock in an agricultural loan association to a purchaser of land until the purchaser assumed the mortgage indebtedness to the bank; citing 12 U. S. C. A., § 641 et seq., 733. Under the general principle stated, and under the agreed facts in this case, and especially as Shingler made his application upon one of the uniform blanks in the form prescribed by the Federal land bank, it must be assumed (because he ought to have known the Federal law) that he knew that before any further proceedings could be taken in the matter he must first, of necessity, assume all the obligations imposed upon Hall. It might be to the interest of Hall to be released, but it was not a matter affecting Shingler, because he would be personally obligated for Hall's debt if he assumed the loan and undertook to stand in Hall's shoes. The obligation of Hall, even if not released, would be transmuted by law into one of suretyship for Shingler.

The Federal land banks are not in the general banking business. The purpose of Congress in establishing those banks was solely to

lend money to *borrowers,* and to borrowers only. So when Shingler offered himself as a substitute for Hall, no matter in what capacity or under what conditions, he was obliged to know, if his offer was accepted, that he could not lawfully be accepted otherwise than as a borrower subject to all the provisions of the farm-loan act. Section 733 of that act is as follows: "Borrowers only to be members; amount of stock to be held by borrower; stock held as collateral; retirement of stock. No persons but borrowers on farm-land mortgages shall be members or shareholders of national farm-loan associations. Any person desiring to borrow on farm-land mortgage through a national farm-loan association shall make application for membership and shall subscribe for shares of stock in such farm-loan association to an amount equal to 5 per centum of the face of the desired loan, said subscription to be paid in cash upon the granting of the loan. If the application for membership is accepted and the loan is granted, the applicant shall, upon full payment therefor, become the owner of one share of capital stock in said loan association for each $100 of the face of his loan, or any major fractional part thereof. Said capital stock shall be paid off at par and retired upon full payment of said loan. Said capital stock shall be held by said association as collateral security for the payment of said loan, but said borrower shall be paid any dividends accruing and payable on said capital stock while it is outstanding." If Shingler came in at all, he came in as a borrower by substitution. He was obliged to be a member of the farm-loan association of which Hall was a member. No shares of stock were issued to Hall which were not left with the association as collateral, and the holder of the stock got only a receipt evidencing a deposit of his collateral. The amount of stock that any one sustaining the relation of a borrower owned was 5 per cent of the loan; therefore in this case $500. But neither Hall nor his successor assuming the loan becomes the owner of any stock until the loan is fully paid. This statement is twice repeated in § 733, quoted above. So, in regard to the complaint as to the non-transfer of the stock to him, it may well be asserted that as the loan had not been paid by Shingler or his executrix, or Hall, the stock has not yet acquired any value. However that may be, as we shall show later, this condition of the agreement between Shingler and Hall, as stated by the defendant, has been fully complied with.

In Scott *v.* Federal Land Bank, supra, the facts were very similar to those involved here. Ernestes borrowed from the Federal Land Bank of Louisville. Scott had a claim against Ernestes, as Shingler had against Hall in this case. On February 9, 1925, Scott purchased two separate parcels of real estate at a delinquent tax sale. On July 6 of the same year he purchased the lands in question at a sheriff's sale. On August 20, 1925, he delivered to the Federal Land Bank of Louisville a certificate similar in form to the one mailed by Shingler, in which he notified that bank that he had "purchased the entire tract of land which had been mortgaged to you by Charles B. Ernestes, . . and I (or we) have assumed the payment of said indebtedness and have purchased the original shares of stock held by the vendor in the Agricultural Farm-Loan Association, and have assumed all the liabilities of membership thereunder." It was upon this writing that the land bank based its action. Scott demurred, and after the overruling of the demurrer he answered, setting up that no promise or contract to pay the indebtedness sued on was shown; also pleas of general denial, payment, and no consideration. As to this, the court held: "The exhibit in question, having been made and executed by appellant, James D. Scott, pursuant to a Federal statute.. requiring the things to be done therein mentioned before Scott was entitled to a loan, is clearly executed pursuant to the Federal law, and not with reference to any State law. Where the subject-matter of a contract is exclusively one of national cognizance, and Congress has enacted a law for its complete regulation, the parties will be presumed to have contracted with reference to the act of Congress and its effect on the subject-matter, and not with reference to the State law." We construe this to be a definite holding that a purchaser of land who in fact intends to assume, and obtains permission of a Federal land bank that he may assume, the relation occupied by a borrower is subject ex vi termini to the obligation assumed by his grantor. If he is accepted by the bank upon his request as a debtor at all, he becomes liable for all the obligations of the original borrower of the land loan. As said in the Scott case, supra: "It is also clear that appellant Scott executed said exhibit for the purpose of inducing appellee to permit appellant to continue the $6,000 loan made by appellee to Ernestes, and also to transfer to appellant Scott said stock in the Agricultural Na-

tional Farm-Loan Association of the par value of $300, which stock was held by appellee as collateral security after having been assigned to appellant Scott, all as provided by statute. The extension of the $6,000 loan to appellant Scott, his election to membership in the Agricultural National Farm-Loan Association, and the transfer to him of stock in the association of the par value of $300, all constituted a good and sufficient present consideration for the assumption by him of the payment of appellee's claim." In this case it appears that Hall, so far as he could do so, stated he had already transferred the stock to Shingler. However, "The fact that the consideration is expressed in a written contract in the past tense does not necessarily show that it is a past consideration." 13 C. J. 365, § 236. The stock was in the possession of the national farm-loan association, and the entry upon Shingler's application to be substituted for Hall was sufficient to inform the land bank to whom the stock belonged, and with whom settlement should be made after the payment of the loan. Under the law, the stock could not be sold without permission of the Federal land bank. So we hold that a more formal transfer of Hall's stock to Shingler was not necessary in order to invest Shingler with all the rights of Hall in the stock.

Section 771 of the Federal farm-loan act provides, in subsection 6, among other things: "In case of the sale of the mortgaged land, the Federal land bank may permit said mortgage and the stock interests of the vendor to be assumed by the purchaser." If the Federal land bank may *permit*, it may also *refuse* to permit the mortgage and stock interests of the vendor to be assumed. The provisions of the Federal farm-loan act were the subject of lengthy consideration, both in the House of Representatives and in the Senate, and it appears from the Congressional Record that the particular provision now under consideration was the result of several amendments and substitutes. Some members of Congress contended that, in order to facilitate the sales of land and transfers of land upon which loans had been obtained, a purchaser of land which had been encumbered to a Federal land bank should have the right to assume the obligation of his vendor as a matter of right. Other senators and representatives contended that the beneficent provisions of the Federal farm-loan act were intended alone for the purpose of aiding agriculture; that the very nature

and terms of the proposed loans, the low rate of interest, the extension of time for as much as forty years, and the amortization plan by which repayments were made in small sums, placed the business of the Federal land banks in an entirely different class from banks and other lenders generally, and that the legislation should not be used merely or largely for the benefit of land speculators, who were not themselves engaged in the vocation of farming. The latter view prevailed; and after many abortive efforts to perfect the bill, the words of subsection 6 of section 771 which we have quoted were adopted by Congress and approved by the President. There was certainly no need for express authority to enable the bank to permit the purchaser from the bank's mortgagor to assume the obligation of the mortgagor in the absence of the incorporation of the language quoted from the act, even if a land bank could properly have objected to a sale of mortgaged land and the assumption of the mortgagor's obligation by the purchaser. It will thus be seen that by the provision, "In case of the sale of the mortgaged land, the Federal land bank may permit said mortgage and the stock interests of the vendor to be assumed by the purchaser," Congress intended to empower the bank to veto any attempted assumption of the loan and stock interests of a borrower by a person to whom the borrower might wish to sell the mortgaged farm where the bank prefers not to do business with the proposed purchaser.

The act indicates that both the local association and the bank are expected to exercise care in the election and approval of member borrowers; but when money is finally advanced and the loan is closed, it is not to the association, but to the bank, that the obligation of the borrower is payable. The local association provided in the act affords a medium by which one engaged in agriculture may obtain a loan, not from the association, but from the Federal land bank. As a further indication of the purpose of Congress to reasonably classify the loans advanced to farmers by the Federal land banks, it appears that provision is made giving a right to the heirs of a borrower to be substituted in his place within sixty days from the death of the borrower. "In case of the death of the mortgagor, his heir or heirs, or his legal representative or representatives, shall have the option, within sixty days of such death, to assume the mortgage and stock interests of

the deceased." 12 U. S. C. A. c. 7, § 771 (6). In the provision as to the heirs it clearly appears 'that Congress intended that if this option were exercised within the time fixed, the bank would have no discretion with reference to such assumption, but would be forced to recognize the heirs or legal representatives as taking the place of the mortgagor. In many cases of assumption by one person of the debt of another, it makes no difference and does not concern the lender. But Congress had in view that under the provisions of the Federal farm-loan act, and in the very nature of the national farm-loan associations, which are permitted in the first instance to select the borrowers with whom they will co-operate, and bearing in mind that the ultimate purpose of the act is to benefit agriculture and not land speculation, the bank, which is not only finally the creditor but is also the supervisor of the entire loan system within its specified territorial jurisdiction, should be concerned in the question as to who is receiving the benefits of the system, and have the right to veto, in the bank's discretion, the entry of one who desires to participate in the benefits afforded by the act of Congress with whom the bank does not wish to co-operate. In such an instance, the bank is given the power to say, "The bank elects not to permit you to assume the obligations of the borrower." This power of selection is the same, and not greater than the bank was authorized to exercise in the selection of the borrower in the first instance.

In construing the Federal farm-loan act, we do not think Congress made any effort to restrict the powers of the Federal land banks in the conduct of their business in procuring additional security (if the bank can do this) upon loans already made in accordance with law, or at any point which may aid in the collection of money already loaned, as all other banks may do. In a given instance, the bank may permit the substitution of one debtor for another, and provision is made upon that subject. It does not appear that the bank, in an instance such as that now presented, would not have been empowered to permit Shingler to assume Hall's obligation in the best interest of the bank, even if no reference had been made to a transfer of the stock interest of Hall, or without regard to the release of Hall. It would seem that under the general powers conferred upon one of these banks, after a loan has been made, the bank would have power to deal with its

funds as already invested, and evidenced by deeds or mortgages, as might be to the best interest of the bank, just as any other bank would do; provided only that the rights of the members of the local association of which the original borrower was a member are not impaired or injuriously affected. In addition to this, there is a sweeping special provision in the 11th paragraph of section 771, which declares that "No loan or the mortgage securing the same shall be impaired or invalidated by reason of the exercise of any power by any Federal land bank or national farm-loan association in excess of the powers herein granted or any limitation thereon." This case relates alone to the Federal land bank, because the national farm loan association has no power in the foreclosure or collection of loans. But if this case involved, as it does not, "the exercise of any power by . . a national farm-loan association in excess of the powers" granted to it, or the exercise of any power in excess of those imposed by the limitations of the act, this paragraph 11 nevertheless protects the loan. However, in the case at bar we hold that all of the conditions required to complete the substitution of Shingler for Hall, whereby Shingler assumed liability for payment of the debt of $10,000 evidenced by Hall's note and security deed to the Federal land bank, were fully complied with on the part of the bank. If Hall did not get a release, this was not due to the bank, but to the failure of Hall (or of Shingler, if he desired Hall to be released) to comply with the conditions which were plainly expressed on the very same piece of paper on which Shingler made request for permission to assume Hall's indebtedness. On this application forwarded by Shingler to the bank was the statement signed by Hall that his stock interest had been transferred to Shingler. This, under well-settled rules, estops Shingler and his executrix to assert that the stock referred to in the petition had not been transferred, subject only to the bank's right to refuse Shingler permission to assume Hall's obligation.

In answer to the continued insistence of the defendant in certiorari that Shingler's assumption of the loan was contingent and dependent upon the release of Hall, we may say that it is plain that Shingler could not assume Hall's debt under any circumstances (as he was asking the bank to give him permission to do), unless he became a stockholder in the association of which Hall was a member. This, not alone for the bank's protection, but so

as not to affect the local association or its members in the mutual relations existing between the stockholders. Shingler had to have Hall's stock before he would be entitled to any of the benefits provided by the national farm-loan act. For this reason, not only is his executrix estopped to assert, in view of the record, that her testator did not assume the obligation of paying Hall's indebtedness, but it must be assumed that both Hall and Shingler contracted with reference to the national farm-loan law. In cases where the subject-matter of a contract is exclusively one of national cognizance, and Congress has enacted a law for its complete regulation, the parties must be presumed to have contracted with reference to the act of Congress and its effect on the subject-matter; but they can not, by agreement or otherwise, make any other law applicable in determining the nature, validity, or interpretation of the contract. M., K. & T. Ry. *v.* Walston, 37 Okla. 517 (133 Pac. 42); Adams Express Co. *v.* Croninger, 226 U. S. 491 (33 Sup. Ct. 148, 57 L. ed. 314, 44 L. R. A. (N. S.) 257); M., K. & T. Ry. *v.* Harriman, 227 U. S. 657 (33 Sup. Ct. 397, 57 L. ed. 690). The Federal farm-loan act as amended creates three separate agencies, with distinct and independent functions: (1) The Federal farm-loan board, at the head of which ex-officio is the secretary of the treasury, which is given general supervision of the administration of the act. (2) The Federal land banks, which are separate and independent corporations, obtaining their charters from the Federal farm-loan board. The Federal land banks are given no power of supervision or regulation over national farm-loan associations, other than to recommend to the Federal farm-loan board for or against the application of these local associations for the grant of charters. (3) The national farm-loan associations, which are authorized to be created by ten or more persons who own farm lands qualified for loans under the terms of the act. The application for a charter of one of these associations, which is in fact merely a local association, is sent to the Federal land bank of the district, and, if recommended, is forwarded by the bank to the Federal farm-loan board. If granted, the farm-loan board issues the charter, and the association, under the act, becomes a separate corporation with the powers stated in the act and the limitations imposed thereby. The particular function of the local association is to receive applications for loans, which are

forwarded to the land bank. Applicants for farm loans are all required to become members of the local association and subscribe to its capital stock. Each association elects its own board of directors, and the board of directors, in turn, chooses the officers, including a secretary-treasurer. The act provides that it is his duty to act as custodian of the funds of the association, etc., to pay borrowers all sums received from the Federal land bank upon first mortgages, and to meet all other obligations of the association in accordance with the by-laws of the association. He is made custodian of all securities, papers, and records relating to the affairs of the association. 12 U. S. C. A. c. 7, §§ 641-1012.

As we have seen, the local farm-loan associations do not derive their charters or powers from the Federal land banks. Their particular function is to receive applications for loans, all of which applicants are required to become members of the association and subscribe to its capital stock; and under the Federal farm-loan act the secretary-treasurer of a local farm-loan association is not an agent of the Federal land bank which makes the loan, but is a public agent whose authority parties dealing with him in this capacity are bound to know. Bjorkstam v. Federal Land Bank, 138 Wash. 456 (244 Pac. 981). And so, if Hall wanted to get released, it was his duty to have proceeded upon the conditions imposed by the bank to effect his desire. Both he and Shingler are presumed to know the law; and it is certain they both knew, from the words upon the paper signed by Shingler, what was required to effect the substitution of Shingler for Hall. Neither made any effort in that direction. We are of the opinion that it is entirely immaterial in this case whether Hall was technically and formally released or not; for it is very evident from his testimony that he treated the entire transaction as closed and ended when he delivered possession of the land to Shingler. His statement to the Federal land bank, on Shingler's application to be permitted to assume the debt, that he had already transferred the shares of stock to Shingler, was sufficient to enable Shingler to require the stock to be transferred to him by whatever formality was necessary. Clearly Shingler was satisfied with the assumption of the loan, regardless of the stock. Early in January Shingler went into possession of the land, and by tenants had it ploughed and planted. He wrote to the land bank and inquired as to the insurance on the

buildings on the land that he got from Hall. He paid one past-due installment on the loan, and another he paid in advance of its maturity. He made inquiry as to the insurance upon the property, because non-payment of the insurance under the contract itself permitted the bank to foreclose. He occupied the land as his own; he conveyed it as his own by deed. No reasonable conclusion can be reached other than that, whatever may have been lacking *in form,* Shingler assumed the obligation of Hall and was content with the *substance.* From a reading of the entire Federal farm-loan act (12 U. S. C. A. §§ 641-1012) it is obvious that the purpose of Congress was to promote and assist agriculture by lending persons engaged in the pursuit of this industry. It is equally plain that the lending of money was not the purpose of the act, but only an incident toward the greater purpose of assisting farmers to become better citizens by reason of owning their own homes and being able to conduct their own affairs. It was not at all in the mind of Congress to aid in boosting the price of lands by land speculators. Under the agreed statement of facts there is no material or substantial conflict in the evidence. Applying the provisions of the Federal farm-loan act as construed with reference to the manifest intention of Congress, the facts in this case demanded a finding for the plaintiff. Consequently the finding of the judge sitting as a jury was error; and the judgment of the Court of Appeals affirming the judgment of the lower court was error.     *Judgment reversed. All the Justices concur.*