## KNOX NATIONAL FARM LOAN ASSN et v PHILLIPS

Ohio Appeals, 5th Dist, Knox Co

No 380. Decided March, 1936

Roger D. Branigan, Vorys, Sater, Seymour & Pease, Columbus, and Charles L. Bermont, Mt. Vernon, for plaintiffs in error.

Henry C. Devin, Mt. Vernon, for defendant in error.

**OPINION**

By LEMERT, PJ.

It is admitted and undisputed that the plaintiffs in error in the instant case operate under and are subject to the provisions of Federal Laws known as the Federal 'Farm Loan Act,' being a part of Title 12 of the United States Statutes. §721 of said Title reads as follows:

"Whenever any national farm loan association shall desire to secure for any member a loan on first mortgage from the Federal Land Bank of its district it shall subscribe for capital stock of said land bank to the amount of 5 per centum of such loan, such subscription to be paid in cash upon the granting of the loan by said land bank. Such capital stock shall be held by said land bank as collateral security for the payment of said loan, but said association shall be paid any dividends accruing and payable on said capital stock while it is out-

standing. Such stock may, in the discretion of the directors, and with the approval of the Federal Farm Loan Boards, be paid off at par and retired, and it shall be so paid off and retired upon full payment of the mortgage loan. In such case the National Farm Loan Association shall pay off at par and retire the corresponding shares of its stock which were issued when said land bank stock was issued."

Sec 733 of said Act in part reads as follows:

"Said capital stock shall be paid off at par and retired upon full payment of said loan."

The language of the statutes just quoted is clear, plain and definite. It will be noted that there is no provision under this law whereby the plaintiffs in error can escape the definite requirement that when and if Phillips pays off his mortgage loan that The Knox National Farm Loan Association must pay off his stock at par and retire same. At the same time the Federal Land Bank is required to pay off at par and retire the corresponding shares of its stock issued in connection with this loan to The Knox National Farm Loan Association, and of course the proceeds should be applied on the borrower's mortgage debt. The law makes no other provision for any other course to be followed no matter whether The Knox National Farm Loan Association is solvent or insolvent.

It is to be noted that in addition to the plain provision of the law as above quoted, we have the fact in the instant case that the plaintiff in error, The Knox National Farm Loan Association, executed and delivered to the defendant in error, Phillips, its written agreement, dated October 24, 1927, setting forth its definite promise in reference to the redemption of the stock in question at face value on final payment of the loan. The language of this agreement, where it refers to the receipt given to Phillips for his 53 shares of capital stock, is as follows:

"It will be accepted at face value on final payment of loan."

Therefore we have in this case not only the absolute and definite requirements of the Federal Law, but also the definite agreement and promise of The Knox National Farm Loan Association, both to the effect that upon final payment of the loan the stock held by Phillips was to be paid off at par, and would be, in fact, accepted

at face value in connection with the final payment aforesaid.

Counsel for plaintiffs in error stress the decision of the Supreme Court of North Dakota, in the case of Byrne v Federal Land Bank of St. Paul, 237 NW, 797, claiming that this decision supports the claim that the plaintiffs in error are relieved from complying with the Federal Statute in respect to the redemption of Phillips' stock, on account of the insolvency of the said The Knox National Farm Loan Association.

Upon a careful reading of this opinion and especially its application to the language of §721 of the Federal Law above quoted, it appears that the Dakota court seems to concede that, taking the language of the section by itself, plaintiffs in the instant case would be required to pay off at par and retire the shares of stock in question, but the court in that case says:

"But this is only a portion of the Act. When we consider the Act as a whole, it is apparent that Congress did not intend the farm loan association to pay off the stock at par when it had nothing with which to pay the stock."

We are of the opinion that the Byrne case should not apply to the instant case and should be definitely distinguished from it, for the reason that in the instant case the association gave to Phillips, under date of October 24, 1927, its written agreement and promise that the receipt given by it to said Phillips for capital stock of the par value of $265.00 would be accepted at face value on final payment of Phillips' loan. For this reason alone we are of the opinion that the Byrne case should not apply. It does not appear in the Byrne case that the plaintiff held any such specific promise on the part of the association. Byrne had relied entirely upon the provisions of §721 of the Federal Farm Loan Act, hereinabove mentioned, and the insolvency of the defendant association was conceded and it was in actual liquidation.

It should be noted in the instant case that primarily this cause is one brought by a citizen and resident of the State of Ohio, to quiet title in respect to real estate located entirely within said state. Under such circumstances Federal courts will follow the laws of the State in which real property is located in determining question involving the title to that property.

In re Barnett, 12 Fed., 2nd Ed., 73-76.

The record discloses in the instant case that Phillips is both a creditor and a stock-holder. That being true, he should not be obliged to permit this confessed insolvent corporation to continue in a business that is apparently fraught with many hazards and has already resulted in considerable losses. If Phillips has no remedy under the law of the State of Ohio, it would be a monstrous and absurd proposition that this defendant, being both a creditor and stockholder, must sit back and take it, while this association repudiates its definite contract and continues to engage in a hazardout business that will likely result in further losses and may reach a place where Phillips as a stockholder would be subjected to an assessment upon his stock to pay further losses.

It is admitted that the association made a definite promise and agreement to pay Phillips this sum of money if and when he paid his loan. There is no contention but what Phillips has paid the loan in full and has complied with the order of the trial court in this respect. It therefore follows that he is entitled to recover judgment against the association for the amount promised and agreed to be paid.

It is admitted that the association refused to accept the receipt from which the above is quoted at face value on final payment of the loan. This makes an entirely different situation than appears in any of the cases cited by counsel for plaintiffs in error. When this association fails to keep this agreement, Phillips is entitled to a judgment for the amount promised him.

Counsel for plaintiffs in error cite a number of Ohio cases pertaining to the rights and claims of stockholders and members of Ohio Building & Loan Associations. Such rights and claims in Ohio are all subject to specific statutes and are subject to exclusive remedies applicable under the Ohio law to Building & Loan Associations and the members and stockholders thereof. These authorities have no application to the case at bar.

We now come to the last proposition submitted by counsel for plaintiffs in error—that the trial court erred in appointing a receiver for The Knox National Farm Loan Association, because it was without authority of law and especially because the provisions of **paragraphs 5 and 6 of §11894 GC** do not grant such authority. We note in paragraph 5 of the above section the following:

"In the cases provided in this Title, and by special statutes when a corporation has been dissolved, or is insolvent, or in immi-

nent danger of insolvency, or has forfeited its corporate rights."

This whole section of the General Code is included in Title 4, and this title is devoted to procedure in Common Pleas Court. Included therein is §11901 GC, which provides for actions in said court to quiet title, and one of the features of this action brought in the court below by the plaintiff below is an action to quiet title. The insolvency of The Knox National Farm Loan Association being an admitted fact, even though courts have held that mere insolvency may not be a sufficient ground in itself in standing alone for the appointment of a receiver, it is apparent from the record in this case that this insolvency, coupled with the other admitted facts relative to this association appearing of record, gave the trial court ample authority within its discretion for the appointment of a receiver.

Receivership is not the only and ultimate relief sought by plaintiff below, because he asks for the winding up of the business and affairs of the association, and in view of the fact that he is both a creditor and stockholder, we are of the opinion that he has a right to demand that this corporation, which has already made a record for definite losses and is now insolvent, should be obliged to wind up its business, distribute its assets among its creditors as far as they may go in paying its debts, and save its stockholders from further losses and possibly double liability assessment if it is permitted to continue operations as in the past.

Just one closing word with reference to the jurisdiction of the court below in this case. We note in the Supreme Court Reporter of January 15, 1936, the case of the United States v Bank of New York & Trust Company. The fifth syllabus of the case provides:

"Grant of jurisdiction to one court does not, of itself, imply that the jurisdiction is to be exclusive."

Chief Justice Hughes, on page 348 of the 56th Supreme Court Reporter, speaking for the court, says:

"The fact that the complainant in these suits is the United States does not justify a departure from the rule which would otherwise be applicable. The government invokes and confers jurisdiction upon the District Court to entertain all suits of a civil nature brought by the United States. The government insists that the United States is entitled to have its claim determined in its own courts. But the grant of jurisdiction to the District Court in suits brought by the United States does not purport to confer exclusive jurisdiction. It is a general rule that the grant of jurisdiction to one court does not, of itself, imply that the jurisdiction is to be exclusive. Upon the state courts of the Union, rests the obligation to guard and enforce every right secured by the Constitution and laws of the United States whenever those rights are involved in any suit or proceedings before them. In this instance it cannot be doubted that the United States is free to invoke the jurisdiction of the state court for the determination of its claim, and the decision of the state court of any federal question which may be presented upon such an invocation, may be reviewed by this court, and thus all the questions which the government seeks to raise in these suits may be appropriately and finally decided."

So that, from a careful examination of the record before us in this case, we are of the opinion that the finding and judgment of the Court of Common Pleas should be and the same is hereby affirmed. Exceptions may be noted.

MONTGOMERY and SHERICK, JJ, concur.