## Bracken-Robertson Nat. Farm Loan Ass'n et al. v. Downing et al.

Dec. 5, 1939.

William J. Goodwin, J. F. Williamson, Martin R. Glenn and Silas Jacobs for appellants.

J. M. Collins and J. M. Collins, Jr., for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

The Federal Land Bank of Louisville, hereinafter referred to as the bank, is one of the twelve federal land banks chartered under the Act of Congress known as the Federal Farm Loan Act (12 U. S. C. A., Sections 672-698). By its charter it is authorized and empowered to lend money upon farm lands in the states of Ohio, Indiana, Kentucky and Tennessee with first mortgages upon such lands as security for the loan.

Under authority and pursuant to the provisions of the same act the Bracken-Robertson National Farm Loan Association, hereinafter referred to as the Association, was incorporated, granted a charter and authorized and empowered to conduct its business in Bracken and Robertson counties, Kentucky, and by later amendment of its charter was authorized and empowered to operate and conduct its business in Mason county. These

charters were granted by the Federal Farm Loan Board which was charged with the administration of the act but the functions of the board have by executive order been transferred to the Farm Credit Administration.

Under the provisions of the Farm Loan Act land banks make loans in communities where the National Farm Loan Associations have been authorized to operate through such associations. In such cases the applicant for a loan must become a member of the local farm loan association and subscribe for shares of its capital stock in an amount equal to 5 per cent of the face of the loan that may be granted by the Federal Land Bank and if the loan is granted must pay for the stock before or when the loan is closed. The association endorses the mortgage loans so made to its members and becomes liable for their payment. For the purpose of indemnity against loss by reason of such endorsement the association holds stock issued in the name of the borrowing member. The association in turn is required to subscribe for stock in the Federal Land Bank in a sum equal to 5 per cent of the loans made to its members. This stock is issued in the name of the endorsing association but is held by the bank as security for payment of mortgage loans endorsed by the association. When the mortgage loan is paid in full the bank pays off at par and retires the shares of its capital stock so purchased and issued in the name of the endorsing association and in such cases the act provides that the endorsing loan association shall pay off at par and retire the shares of its stock which were issued in connection with the loan.

In 1926, Robert L. Downing became a member of the association and through it procured a loan of $20,000 from the bank secured by a first mortgage on his farm in Mason county. In his application for the loan he subscribed for capital stock in the association in the sum of $1,000 as required by the Federal Farm Loan Act and requested the bank to deduct the sum of $1,000 from the total proceeds of the loan and to apply same in paying for 200 shares of a par value of $5 each in the capital of the association to be issued in his name which was done. The stock issued in the name of Mr. Downing was held by the association for the purposes above indicated but he was issued a receipt therefor which recited that the stock was being held by the association pursuant to the provisions of the Federal Farm Loan

Act as collateral security for the payment of the loan and that it could not be legally transferred except to a purchaser of the mortgaged farm.

On March 16, 1936, Robert L. Downing conveyed the farm covered by the mortgage to another and the grantee paid in full the balance due on the mortgage which was duly released of record by the bank on March 26, 1936. In the meantime, however, Robert L. Downing had executed and delivered to J. C. Everrett & Company, a corporation, a note for $1,000 and attempted to pledge as security 200 shares of the bank stock.

After the loan had been paid by Mr. Downing's vendee and the mortgage released, Robert L. Downing and J. C. Everrett & Company instituted this action at law against the association and the bank and in their petition set out the foregoing facts relative to the mortgage loan, the issuance of the stock by the bank and by the association, the payment and release of the mortgage, the execution of the note to J. C. Everrett & Company, and alleged that defendants were jointly and reciprocally engaged in making farm loans; that before payment of the mortgage indebtedness to the bank, Robert L. Downing and the purchaser of the farm who paid the balance due on the mortgage demanded payment of the stock issued to Downing or credit for same at its face value upon payment of the loan and that since the payment of the loan plaintiffs had demanded payment of the stock at its face value but that defendants had refused to pay plaintiff $1000.00, the face value of the stock. They prayed judgment against defendants for such sum with interest from March 26, 1936, and their costs and that the proceeds of the stock be applied so far as might be necessary to the satisfaction of the note from Downing to J. C. Everrett & Company.

By amended petition plaintiffs alleged that on June 10, 1935, defendants and Robert L. Downing entered into a new contract relative to the loan which provided, in part:

"The aggregate amount remaining unpaid for the term of said mortgage as set forth above is correct as of July 1, 1937; and that such amount of indebtedness shall be repaid on an amortization plan in accordance with the provisions of the Federal Farm Loan Act as amended consisting of 71 semi-

annual installments beginning September 1, 1935, and final payment due on March 1, 1971;"

and alleged that by reason of such contract Robert L. Downing was placed under the provisions of section 744a, 12 U. S. C. A. of the Federal Farm Loan Act as of June 16, 1933, whereby stockholders of the Federal Farm Loan Association were relieved from "double liability" as provided in section 744, 12 U. S. C. A., of the act enacted in July 1916, and by reason of such fact Robert L. Downing was relieved from double liability on the stock in controversy. It was further alleged that the Bracken-Robertson Association was in operation at the time the loan was made but that subsequent thereto the Bracken-Mason National Farm Loan Association was organized and operated by the same personnel and under the same jurisdiction as the Bracken-Robertson Association and it was the duty of the latter upon formation of the former to transfer the mortgage and loan of plaintiff to the Bracken-Mason Association; that the Bracken-Mason Association is and was on March 26, 1936, wholly solvent and would have paid plaintiff the $1,000 sought to be recovered had the mortgage been properly transferred to the Bracken-Mason Association as contemplated and required by the Federal Farm Loan Act; that the Bracken-Robertson National Farm Loan Association is doing business generally with the public, making loans and operating just as it always did since its organization except that it refused to pay the face value of the stock in cash upon repayment by the borrower and had continued doing business with the public generally as a going concern and is estopped to rely upon a plea of insolvency as a defense in this action

Each of the defendants interposed a demurrer to the petition and amended petition which was overruled. By their joint and separate answers consisting of a number of paragraphs appellants traversed the allegations of the petition as amended and among other things affirmatively alleged that the bank and the association were separate and distinct corporations and denied that the bank made any deduction from the loan for the purpose of purchasing capital stock of the bank and denied that appellees or either of them ever purchased or owned any stock of the bank. They denied that Downing did or could transfer or pledge with J. C. Everrett and Company any of the capital stock or any interest

therein. They further affirmatively alleged that at the time the mortgage debt was paid, the association was insolvent and set forth figures showing that the liabilities of the association largely exceeded its assets; that unpaid losses sustained by the bank upon loans endorsed by the association amounted to over $28,000 and that the outstanding stock of the association was in a sum slightly in excess of $44,000; that because of individual liabilities of shareholders in the association a refund of the value of the stock in controversy under the circumstances would amount to improper and unlawful preferment of Robert L. Downing over other shareholders.

A motion to transfer the cause to equity docket was overruled. The court sustained a demurrer to the answer and the defendants declining to further plead it was adjudged that the plaintiffs recover of the defendants the sum of $1,000 with interest from March 26, 1936, and the costs and defendants are appealing.

However, before judgment was entered a stipulation between the parties had been filed reciting that on or about June 10, 1935, an agreement was entered into by Robert L. Downing and the defendants which was duly recorded in the county court clerk's office in Mason county and that a copy of same was attached to the stipulation. This agreement is the new contract referred to in the amended petition. It was further stipulated that a number of mortgages had been taken by the bank on property in Bracken county and that such of these mortgages as were taken through the association since it had been considered insolvent had been taken with a stipulation and understanding in substance that persons who were admitted to membership therein during the time the association's capital stock was impaired were advised of such impairment and that the association might not be able to work out of its difficulties; that all persons so admitted to membership during the time the association's stock was impaired acknowledged in writing that they knew the facts and stated that they desired to become members notwithstanding same and agreed to assume all obligations and responsibilities of membership in the association.

It is argued in substance on behalf of appellants that the bank and the association are entirely separate

and distinct corporations and the former is not liable in any manner or to any extent for the capital stock of the latter and that the bank did not issue any stock to appellee Downing; that the demurrer to the petition as amended should have been sustained, especially the demurrer of the bank. This contention insofar as the bank is concerned is supported by an abundance of authority and no cases have been cited and none found to the contrary.

In the case of Federal Land Bank of Columbia v. Mrs. Will Gaines, 290 U. S. 247, 54 S. Ct. 168, 171, 78 L. Ed. 298, the Supreme Court of the United States in reviewing a decision of the state court held in effect that National Farm Loan Associations and Federal Land Banks are separate and distinct corporations, saying:

"The state court rested its decision on the characterization of the association as a public agent, but it did not hold that the association was in any sense an agent for the lender bank. It could not well have done so."

In Federal Intermediate Credit Bank v. Simpson's Adm'r, 261 Ky. 142, 87 S. W. (2d) 136, 139, this court cited the above Supreme Court case and recognized it as holding "that such farm loan corporation, composed of borrowers under the Federal Farm Loan Act, is in a general sense a public agency for carrying out the policy of the statute but that it does not act as the agency of the lending Federal Land Bank."

In the case of Byrne v. Federal Land Bank of St. Paul and the Nortonville National Farm Loan Association, 61 N. D. 265, 237 N. W. 797, 801, the court had for decision the same question presented for consideration here and under a state of facts in every material respect identical. Byrne as a member of the loan association procured a mortgage loan from the bank. Stock in the loan association to an amount equal to 5 per cent of the face of the mortgage was issued to him but was retained by the association. Byrne defaulted in payment and under foreclosure proceedings the bank purchased the property for its debt with accumulations. The bank retired its own capital stock issued in the name of the association by crediting the par value thereof upon indebtedness of the association to the bank growing out of losses sustained on other loans

made by the bank and endorsed by the association. Byrne sought to recover of the bank and the association the par value of the stock issued to him. It is recited in the opinion that plaintiff contended that the bank and the loan association are one and the same institution and the latter being an agency of the former and therefore when the loan association took his money and issued shares of stock, the money was in fact taken by the land bank for purchasing shares of stock in the bank and these latter shares were in fact property of plaintiff; that when the loan was paid the shares of stock in the bank and the association were required to be cancelled and upon cancellation he was entitled to return of his money. The court said that the procedure in the foreclosure suit amounted to payment of the loan. In disposing of the contention made by the borrower the court after reviewing pertinent provisions of the Farm Loan Act said:

"The prospective borrower is a stockholder in the loan association, not in the Federal Land Bank. It is the corporation known as the 'loan association' which is the stockholder in the Federal Land Bank. The two institutions are separate and distinct corporations, though both are necessary to carry out the purposes of the Federal Loan Act.
\* \* \*

"Thus when the plaintiff took stock in the 'Nortonville National Farm Association,' he became a member of that corporation, but he did not become a member of the Federal Land Bank. The stock taken by the loan association belonged to that corporation, and not to him. Hence the plaintiff has no cause of action against the Federal Land Bank."

See also Federal Land Bank of Berkeley v. Warner, 42 Ariz. 201, 23 P. (2d) 563; Gantt v. Gunter, 225 Ala. 679, 145 So. 146; Federal Land Bank of Columbia v. Shingler, 174 Ga. 352, 162 S. E. 815; Hooper v. Federal Land Bank of Columbia, 178 Ga. 571, 173 S. E. 415; Zeigler v. Federal Land Bank of Houston, Tex. Civ. App., 86 S. W. (2d) 864.

As is revealed by the authorities cited appellees nor either of them had a cause of action against the bank and the demurrer to the petition so far as the bank was concerned should have been sustained.

It is further contended in effect by counsel for ap-

pellants that in any event, and notwithstanding their position that the demurrer of the association to the petition should also have been sustained and to which they adhere, the demurrer to the answer should have been overruled.

The Farm Loan Act (12 U. S. C. A., sec. 744), relating to the liability of shareholders in farm loan associations provides:

"Shareholders of every national farm loan association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of such association to the extent of the amount of stock owned by them at the par value thereof, in addition to the amount paid in and represented by their shares."

That section was in full force and effect when Mr. Downing secured the loan from the bank. However, and as will presently be made to appear, the Farm Loan Act was later so amended as to relieve stockholders of farm loan associations of what is known as double liability under the quoted sections. The pleas of insolvency upon the part of the association and the figures set out to substantiate the plea must for the purpose of demurrer be treated as admitted. The identical question presented for decision was involved in the case of Knox Nat. Farm Loan Ass'n v. Phillips, 54 Ohio App. 334, 7 N. E. (2d) 566, where the borrower was attempting to recover the par value of the stock issued by a farm loan association of which he was a member in connection with a loan made to him endorsed through the association by the Federal Land Bank. Notwithstanding a similar defense and stipulation in that case that the farm loan association was insolvent it was adjudged that Phillips recover the par value of the stock issued in his name by the association and that a receiver be appointed to wind up the business and affairs of the association. The Ohio Supreme Court having denied a writ of review, the case was presented to and reviewed by the Supreme Court of the United States and that court in an opinion by Mr. Justice Cardozo reported in 300 U. S. 194, 57 S. Ct. 418, 421, 81 L. Ed. 599, 108 A. L. R. 738, reversed the judgment of the Ohio court and among other things said:

"* * * neither the bank nor the association is under a duty to retire stock when the associa-

tion is insolvent, and thus to give to the withdrawing member through the return of his subscription a preference over others. The statute is misread if the sentences regulating withdrawal are taken out of the setting of a co-operative scheme and viewed in isolation. Under the law as it stood when respondent became a member, the shareholders were subjected to a personal liability for all the contracts, debts, and engagements of the association 'to the extent of the amount of stock owned by them at the par value thereof, in addition to the amount paid in and represented by their shares.' Section 9, 12 U. S. C., sec. 744 (12 U. S. C. A., sec. 744). The association is already in default in the payment of its mortgage debts, and already its capital is impaired. In such circumstances, to return to respondent the amount paid in and represented by his shares would frustrate the statutory mandate that the amount so paid in shall constitute a fund for the benefit of creditors to be supplemented in case of need by personal liability for as much more as the investment. Indeed, altogether apart from any pledge of personal liability, the whole structure of the association is built upon the implication of equal rights and duties on the part of the co-operating members. To permit a member to withdraw when the association is insolvent would be to cast upon his fellow members the responsibility for defaults for which all should answer ratably, in proportion to their interests. * * *

"The conclusion thus arrived at is in accord with well-considered opinions in North Dakota and Arkansas where the same question was involved. Byrne v. Federal Land Bank [61 N. D. 265, 237 N. W. 797], supra; Western Clay National Farm Loan Association v. Lilly, 189 Ark. 1004, 76 S. W. (2d) 55, 95 A. L. R. 1506. It has the support of persuasive analogies in the law of building and loan associations, which have much in common with farm loan associations incorporated by act of Congress. The settled rule is that the shares of building and loan associations are not subject to retirement when the association is insolvent, and that any refund made at such a time may be reclaimed by a receiver."

The Supreme Court of the United States having first spoken and thus construed the Federal Farm Loan Act, it should and will be followed by this court.

It is contended by counsel for appellees that Downing was relieved of double liability under the above quoted section relating to the liability of shareholders of the National Farm Loan Association by the amendment of June 16, 1933, but that amendment only applies to contracts, debts or engagements of the association entered into after June 16, 1933, and did not attempt to relieve any other liability with respect to stock held by shareholders. The new contract pleaded and relied on by appellants as bringing appellee Downing under the provisions of the amendment clearly did not have that effect. The original obligation stood unaffected by the agreement except that more liberal terms with respect to amortization payments were granted the borrower and that did not constitute a novation or otherwise affect his original liability. See Commonwealth Life Insurance Company et al. v. Louisville Railway Company et al., 234 Ky. 802, 29 S. W. (2d) 552.

We do not deem it inappropriate in closing to note that if in fact the association is insolvent, appellee Downing is not left entirely without remedy. The procedure that may be followed in such circumstances is clearly indicated in Knox National Loan Association v. Phillips, supra, and with respect thereto it is said:

"To this we add, however, that a * * * loan association is an instrumentality of the federal government; that the time and manner of liquidation are governed by the federal statute; and that jurisdiction does not reside in the tribunals of a state to wind up the business of this governmental agency either by a receivership or otherwise."

For the reasons indicated the judgment is reversed and the cause remanded for proceedings consistent with this opinion.

Whole court sitting, except Judge Rees.