## GOOD HUMOR CORPORATION OF AMERICA v. POPSICLE CORPORATION OF UNITED STATES et al.

### No. 953.

District Court, D. Delaware.
May 27, 1932.

Thomas G. Haight of Jersey City, N. J., John F. Robb, of Cleveland, Ohio, and Arthur G. Logan, of Wilmington, Del., for plaintiff.

Merrell E. Clark, of Fish, Richardson & Neave, of New York City, and Charles F. Curley, of Wilmington, Del., for defendants.

NIELDS, District Judge.

This is a motion for a preliminary injunction in an equity suit brought by Good Humor Corporation of America against the Popsicle Corporation of the United States (herein called Popsicle Corporation) and Joe Lowe Corporation, charging patent infringement and unfair competition.

Plaintiff seeks to enjoin the defendants from continuing certain practices which plaintiff alleges constitute contributory infringement of Burt United States patents, No. 1,470,524, issued October 9, 1923, for a "Process of Making Frozen Confections," and No. 1,718,997, issued July 2, 1929, for the product "Frozen Confection." In this hearing defendants are not contesting the validity of either patent. They seek to justify their practices under a certain license agreement of October 13, 1925, between Harry B. Burt, the patentee, licensor, and the defendant Popsicle Corporation, the licensee.

About 1920, Burt, an ice cream manufacturer in Youngstown, Ohio, developed a process for freezing confections on a stick. These confections comprised both food and drink. The usual food confection frozen on a stick is made from ice cream or the like. The usual drink confection is made from flavored syrup, water ice, or sherbet. For nearly ten years the plaintiff and its predecessors, owners of the patents in suit, have been licensing ice cream manufacturers in many of the leading cities throughout the United States to manufacture and sell frozen confections consisting of ice cream frozen on a stick in rectangular form and coated with chocolate. These confections were sold under the trade-name "Good Humors" for 10 cents each from attractive white motortrucks stationed along the streets and highways.

In 1923 defendant Popsicle Corporation was incorporated to manufacture and sell, and license others to manufacture and sell, frozen

suckers on sticks under the trade-mark "Popsicle." They were commonly called "A Drink on a Stick." They were manufactured under United States letters patent No. 1,505,592, issued to Frank W. Epperson, August 19, 1924. The process of the Epperson patent was one whereby a frozen mass is formed homogeneous from end to end, of a character such that the flavoring matter and sugar may be sucked therefrom to leave a tasteless mass of snow or ice. Popsicle Corporation v. Weiss (D. C.) 40 F.(2d) 301. "Popsicles" were water ice or sherbet from syrup frozen in a quiescent condition and cylindrical in form. They were never ice cream, milk, or the like. Their unique characteristic was the suckability of the syrup from the ice frame or body. The Popsicle Corporation granted to the Joe Lowe Company, Inc., a predecessor to Joe Lowe Corporation, one of the defendants, the exclusive sales and merchandising agency for frozen suckers under the trade-mark "Popsicle."

In 1925 Burt brought suit against Popsicle Corporation alleging infringement of Burt's patent rights in the manufacture and sale of frozen suckers or Popsicles. This suit was not tried. Through negotiations between Joe Lowe, president of Joe Lowe Company, Inc., and Burt, the license agreement of October 13, 1925, was made between Burt, licensor, and Popsicle Corporation, licensee. The agreement recited the ownership by licensor of certain patents, including Burt patent, No. 1,470,524, and the pendency of the suit by licensor against licensee for infringement of the Burt patents, and provided:

"First. The Licensor [Burt] hereby grants unto the Licensee [Popsicle] a license for the life of each of said patents issued or to be issued for the entire United States and Canada to manufacture and sell Popsicles or frozen suckers comprising a mass of flavored syrup, water ice or sherbet frozen on a stick, and license others to do so, using the process and apparatus claimed in the above identified patents, or made in accordance with any other patent or patents relating to frozen suckers which may be secured or acquired by the Licensor. * * *"

"Third. It is understood that this license applies only to Popsicles or frozen suckers, comprising a mass of flavored syrup, water ice or sherbet frozen on a stick, and that Licensor reserves unto himself all other rights under the patents including the right to make frozen suckers from ice cream, frozen custard or the like."

"Tenth. The Licensor agrees not to make

or license others to make frozen suckers in cylindrical form, and the Licensee agrees not to make or license others to make Popsicles or frozen suckers in rectangular form."

It is perfectly clear from the above extracts from the license agreement that Burt and Popsicle Corporation intended to divide the frozen sucker field between them. What was the division? That is the question in dispute. By the agreement Popsicle Corporation was granted a license to manufacture and sell "Popsicles or frozen suckers, comprising a mass of flavored syrup, water ice or sherbet frozen on a stick." In the same sentence of the agreement Burt reserved to himself, "all other rights under the patents, including the right to make frozen suckers from ice cream, frozen custard or the like." If Burt reserved to himself the right to make frozen suckers from ice cream or the like, it necessarily follows that he did not also grant to Popsicle Corporation the right to make frozen suckers comprising ice cream or the like. However, say defendants, Burt licensed us to make "sherbet frozen on a stick." Defendants assert that the word "sherbet" as used in the license agreement is a technical term in the trade. In support of this contention defendants have filed affidavits of professors and of executives of associations of ice cream manufacturers. These affidavits, however, support the position of the plaintiff that the word "sherbet" in the year 1925 had more than one meaning. From the evidence it clearly appears that "sherbet" meant water ice, according to definitions in standard dictionaries, common usage, and the actual practice of the Popsicle Corporation at that time.

In construing the license agreement, the court should consider the agreement as a whole, and should put itself into the position of the parties and examine the circumstances under which the contract was made. Chesapeake & O. Canal Company v. Hill, 15 Wall. 94, 21 L. Ed. 64. A construction should be sought giving full force and effect to all provisions of the agreement rather than attributing a narrow and technical meaning to a single term resulting in confusion and uncertainty. O'Brien v. Miller, 168 U. S. 287, 297, 18 S. Ct. 140, 42 L. Ed. 469. Under these rules of construction the right to make frozen suckers from ice cream or the like was reserved by the license agreement to the licensor under his patents and was not granted to Popsicle Corporation under that agreement. The narrow and technical meaning of the word "sherbet" resulting in the confusion of contradictory terms should not

be attributed to it. It follows that the making of frozen suckers on a stick from milk, ice cream, or the like was reserved to the licensor under his patents, and was not granted to Popsicle Corporation under its license.

For five or six years following the agreement of October 13, 1925, the division of the frozen sucker field was observed without conflict. Defendants continued to sell their frozen confection made of flavored syrup, water ice, or ice sherbet under the name of "Popsicle." As late as 1930 defendants advertised popsicles as "A Drink on a Stick," "Popsicles frozen suckers 'orange ice on a stick' and seven other delicious flavors." "They do not in any way affect your ice cream capacity." "Popsicles because of their water ice nature are sought by those who are thirsty." This subsequent conduct of defendants is strong evidence of the intention of the parties in 1925. "There is no surer way to find out what parties meant, than to see what they have done." Brooklyn L. Insurance Co. v. Dutcher, 95 U. S. 269, 273, 24 L. Ed. 410.

In the fall of 1931 plaintiff licensed ice cream manufacturers to manufacture and sell an ice cream confection frozen on a stick, rectangular in form and coated with chocolate under the name of "Cheerio" at 5 cents each. Defendants regarded this as an invasion of their field. They countered by licensing the ice cream manufacturers to manufacture and sell a 5-cent confection on a stick under the name of "Milk Popsicle," likewise coated with chocolate and substantially rectangular in form. Defendants justify this move by declaring that the Popsicle was essentially a summer drink, and, "In order to satisfy the demands of our licensees and to enable them to make a profitable business during the slow winter months, it was decided among our officers and those of our co-agents to father a sherbet type 'Popsicle' under the name 'Milk Popsicle.'" The heart of this case is whether defendants were licensed to license others to make milk popsicles under the agreement of October 13, 1925. The particular formula for Milk Popsicles used by defendants and their licensees called for 23 gallons of mix sufficient for 2,000 popsicles, consisting of "9 gals. Vanilla Ice Cream Mix, 6 gals. Concentrated Skim-milk, 19 lbs. Cane Sugar. * * *" It is clear that such a product is made from ice cream or the like. It is equally clear that such a product is reserved to the plaintiff under the license agreement. Not satisfied with the change in ingredients, defendants changed the form of their product from a cylindrical form uncoated to a substantially rectangular form coated with chocolate.

At the hearing of the motion the court saw plaintiff's product and defendants' "Milk Popsicle." Except for a slight difference in shape, they were the same. A chemical analysis would be necessary to ascertain the difference between them. Plaintiff's affidavits show that purchasers of Milk Popsicles understood them to be ice cream. The parties to the license agreement never intended that the licensee should have the right to make a product so like that which Burt reserved for himself in appearance, texture, and taste that it could not be distinguished therefrom except by chemical analysis. "We have only to establish the construction of a bargain on principles of common sense applied to the specific facts." Heyer v. Duplicator Mfg. Co., 263 U. S. 100, 102, 44 S. Ct. 31, 32, 168 L. Ed. 189.

Being satisfied that the so-called "Milk Popsicle" complained of in this suit does not come within the terms of the license granted to the Popsicle Corporation, but is an infringement of the Burt patents in suit, it is unnecessary on this hearing to pass upon the question of unfair competition.

A decree granting a preliminary injunction may be submitted.