## POPSICLE CORPORATION OF THE UNITED STATES et al. v. GOOD HUMOR CORPORATION OF AMERICA.

## GOOD HUMOR CORPORATION OF AMERICA v. POPSICLE CORPORATION OF THE UNITED STATES et al.

### Nos. 4960, 4973.

Circuit Court of Appeals, Third Circuit.

Aug. 7, 1933.

Wm. T. Tredway, of Pittsburgh, Pa., for appellant.

Wm. B. Paul and Norman A. Allen, both of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and THOMPSON, Circuit Judges.

Fish, Richardson & Neave, of New York City (Charles F. Curley, of Wilmington, Del., Ira Skutch and Merrell E. Clark, both of New York City, and Daniel O. Hastings, of Wilmington, Del., of counsel), for Popsicle Corporation of America et al.

Thomas G. Haight, of Jersey City, N. J., John F. Robb, of Cleveland, Ohio, and Arthur G. Logan, of Wilmington, Del., for Good Humor Corporation of America.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge.

These are cross-appeals from an interlocutory decree preliminarily enjoining, and failing to enjoin, the defendants from practices which, it is alleged, constitute violations of a license agreement and hence infringements of the plaintiff's patents. Relying upon the opinion of the trial court (59 F.(2d) 344) for a detailed statement of the facts, the following will be enough to bring into view the issues presently here on appeal.

In 1920 or 1921, Harry B. Burt, a manufacturer of ice cream, conceived the idea of making "ice cream, sherbet, ices, or the like" on a stick. Apparently the idea was novel. If reduced to practice, conceivably it might be useful and commercially valuable. Certainly it contained a problem as to how it could be done. Later, Letters Patent No. 1,470,524 for the process and No. 1,718,997 for the product issued to Burt, who created a market for the product under the trade name "Good Humor."

In 1923 the Popsicle Corporation put on the market a frozen confection on a stick under the trade name "Popsicle," ostensibly made under Letters Patent No. 1,505,592 issued in 1924 to Epperson. The thing in common between the Burt and Epperson products is a frozen confection body united to a stick handle by congelation, enabling it to be held conveniently and be eaten or sucked off the stick. The thing which distinguishes the two products in their manufacture is that the Burt confection is frozen to the stick by agitation and the Epperson confection is fastened to the stick by intense quiescent freezing; and the thing which distinguishes their use or consumption is, that while both can be eaten or sucked, the Burt confection being ice cream, is ordinarily eaten or consumed and the Epperson confection, being frozen water and quite correctly advertised as "A Drink on a Stick," is ordinarily sucked, leaving a tasteless comb-like shell of ice or snow to be eaten or cast away. Burt, thinking the Epperson

process used in the manufacture of Popsicles impinged upon his process patent, sued the Popsicle Corporation for infringement. Pending suit, the parties in 1925 composed their differences by entering into a license agreement whereby, each admitting the validity of the patents of the other, Burt granted to the Popsicle Corporation the right exclusively "to manufacture and sell Popsicles or frozen suckers comprising a mass of flavored syrup, water ice or sherbet frozen on a stick" (not, however, in rectangular form), and the right to "license others to do so," reserving to himself however "all other rights under (the process patent then issued and the product patent which eventuated from an application then pending) including the right to make frozen suckers from ice cream, frozen custard or the like" (not, however, in cylindrical form), preferably to be covered with an outer coating of chocolate or other confection.

Burt died. His patents and certain of his license rights were acquired by the plaintiff. The Popsicle Corporation had made the Joe Lowe Corporation a licensee and its selling agent.

In this situation the parties, selling annually through their licensees many millions of their products, operated under the license agreement without any trouble until hard times came. Then the plaintiff, realizing that the license agreement was silent as to the size and price of the articles in respect to which rights were granted and reserved, and recognizing the drop in the cost of milk, set about to meet the conditions of a falling market by reducing the size of its frozen ice cream confection and reducing the price from ten cents to five. It marketed this article under the name "Cheerio." The Popsicle Corporation was confronted by the same business conditions but, as its product sold at five cents, the price could not very well be reduced. Thereupon, it changed the composition of its product from flavored ices and frozen syrups to what it conceived to be a "sherbet" which within the terms of the license agreement it was authorized to make under the Burt patents and licensed others to put upon the market a "Milk Popsicle," likewise coated with chocolate. Then the plaintiff, believing the new product to be within that portion of the field which had been reserved to itself, brought this suit by a bill with a three-fold aspect, viz.: (1) For infringement of its two patents; (2) to compel specific performance of the covenants of the license agreement; and (3) to prevent alleged unfair competition on

the part of the defendants, accompanied by a motion for a preliminary injunction. The learned trial court, passing by the question of unfair competition and having before it a mass of affidavits bearing on the meaning of the word "sherbet," entered a preliminary injunction on its construction of the license agreement, restraining the defendants and their licensees (1) from infringing the patents by practices which fall outside the field of the license and (2) from making and selling "Milk Popsicles" or any like product from its Milk-Popsicle formula or other formula containing milk, ice cream mix, ice cream, frozen custard or the like "except that (they) shall be free to use milk in the small quantity heretofore used (by them) in the manufacture of "Popsicles" of certain flavors made in accordance with and frozen by the process of Epperson United States Letters Patent No. 1,505,592."

Both parties appealed.

### The Defendants' Appeal.

On the defendants' appeal, the only question is whether the Milk Popsicle, or any similar product, is within the Burt-Popsicle agreement licensing the defendants (with the right of granting sub-licenses) to make and sell "Popsicles or frozen suckers, comprising a mass of flavored syrup, water ice or *sherbet* frozen on a stick."

So far as the record shows, the Burt and Epperson patents cover the whole field of a confection frozen on a stick. There can be no doubt that the parties through their license agreement intended to divide, and actually did divide, the field between themselves, conforming to their previous practices, and seeking to hold, and perhaps enlarge, their respective trades. They were dealing with things as they were in 1925. Burt, in plain words, said to the Popsicle Corporation, I will reserve the right to make and sell and license others to make and sell, under my patents, "frozen suckers from ice cream, frozen custard or the like," on a stick, which was exactly what he had been doing; you may make and sell and license others to make and sell, under my patents, "Popsicles or frozen suckers, comprising a mass of flavored syrup, water ice or sherbet on a stick," which, in respect to suckers of flavored syrup and water ice, was exactly what they had been doing, yet had been doing, it was alleged, by infringing the Burt patents. The defendants then paid Burt a price to be forgiven for past infringements and to be granted the right thereafter to make their product under his patents.

That, we gather, is the intent and substance of the license agreement, and it was so regarded and acted upon by all parties until 1931 when the defendants put milk into their product; justifying under the license which granted them the right to make, and license others to make, suckers of "sherbet," claiming that the Milk Popsicle is a sherbet within the meaning of the word as used in the art and that the word in the license agreement has the same meaning.

In the affidavits, supporting and opposing the motion for a preliminary injunction, there is a wide variety of opinion as to what constitutes sherbet. Its dictionary definition is "a flavored water ice." Here there is no mention of milk. Others define a sherbet to be a flavored water ice with the addition of some milk, not for food value but only to smooth out the texture of the ice. Still others include more milk to make the product more delectable. The defendants included a very substantial quantity of milk, advertising its food value, "Milk Popsicles high in food value for cool days." Thus Milk Popsicles became or closely approached ice cream. The defendants made a standard mix of 23 gallons, of which 9 gallons were vanilla ice cream mix (the substance of ice cream before it is frozen) and 6 gallons of concentrated skim-milk. Thus sixty-five per cent. of the mix was milk and milk base, yielding about 4 per cent. butter fat. Even so, the defendants say this was sherbet within its meaning in the art; therefore within the meaning of the license.

We are not called upon to give a meaning to the word "sherbet" either as defined by the dictionaries or as used in the art. We are not dealing with the word in the abstract, but as used by the parties. It must be interpreted in connection with the other words they employed in their contract of license. Burt with one hand gave the Popsicle Corporation certain rights and in his other hand retained certain rights. He withheld, or reserved, the right to make "frozen suckers from ice cream, frozen custard or the like." He gave up and granted the Popsicle Corporation the right to make suckers from "water ice or sherbet." Thus he distinguished between "ice cream * * * or the like" and "water ice or sherbet," and to that the Popsicle Corporation assented. If the defendants used so much milk in a sherbet (however defined) as to make it ice cream or "like" ice cream, the learned trial judge was unable on inspection to distinguish the products in appearance, texture and taste —they breached the covenants of the license and infringed the patents. If, in the art,

sherbet means a mild or weak ice cream, and the contract of license is to be interpreted not by its own terms but in terms of the art, then it would seem that Burt gave away something he had expressly reserved, and the parties entered into a senseless contract. Manifestly Burt did not grant and reserve a right to make and sell the same things. The word "sherbet" must be construed not by what some workers or teachers in the art may understand it to mean, but by what the parties to the license agreement understood and intended it to mean. Their understanding is shown by a careful division of the sucker field and by six years' strict observance of the distinction they had made between milk and water composition of suckers.

Construing the contract as the learned trial judge construed it on the present record, the decree awarding a preliminary injunction is affirmed with three-fourths of the costs of appeal to be assessed against the defendants.

### The Plaintiff's Appeal.

In Paragraph 10 of the license agreement, "the licensee agrees not to make or license others to make Popsicles or frozen suckers in rectangular form." When the defendants exploited the "Milk Popsicle" they abandoned the cylindrical form of Popsicle, to which they were restricted and to which theretofore they adhered, and adopted a form in close simulation to that of the plaintiff which, the plaintiff alleges, is rectangular and therefore is a breach of their covenant, justifying a preliminary injunction against further like breaches. On this matter the decree, as well as the opinion of the trial court, is silent; hence the plaintiff's appeal.

While we do not know why the learned trial judge ignored the plaintiff's insistence for injunctive relief in that regard, we can imagine what actuated him at that preliminary stage of the case. He purposely said nothing on the issue of unfair competition. The plaintiff admits that the shape of the Milk Popsicle does not arise in that phase of the case. Then it must arise on the issue of infringement of the patents or on the issue to enjoin further breaches of the contract by making or licensing Milk Popsicles. It cannot arise on a straight question of infringement, for none of the claims of either patent says anything about the shape of the product. It must, therefore, arise on the issue of the defendants' breach of the license agreement by making and licensing others to make Milk Popsicles.

Now the licensing, making and selling of Milk Popsicles, from a given formula, was the only practice charged against the defendants and preliminarily found to be a breach of the license agreement and therefore infringement. The judge, accordingly, enjoined the further making and licensing of that product or of one like it. He was not concerned with the making of a permitted product in prohibited form. It would therefore seem unnecessary at that stage of the case for the court to restrain the defendants from making and licensing, others to make Milk Popsicles in rectangular form when the manufacture and sale of Milk Popsicles had themselves been restrained. In other words it would seem futile for the court to forbid the defendants to do a certain thing and then say they must not do the forbidden thing in a certain way.

Expressing no opinion on the ultimate outcome of this phase of the case, we find no error in its omission from the interlocutory decree. Our affirmance of the decree of the District Court stands, with one-fourth of the costs of appeal to be assessed against the plaintiff.