## UNITED STATES v. LEWIN et al.
### No. 21063—L.

District Court, N. D. California, S. D.

Oct. 5, 1939.

Frank J. Hennessy, U. S. Atty., and Louis R. Mercado, Jr., Asst. U. S. Atty., both of San Francisco, Cal.

Irving M. Liner, of Oakland, Cal., for defendants.

LOUDERBACK, District Judge.

The plaintiff moves to strike the defendant's pleadings as specious and impertinent; for judgment on the pleadings because no defense is pleaded in the answer; and for summary judgment because the answer raises no issue of law or fact.

There is presented on these motions, the complaint, the answer and amended answer, and affidavits.

The case involves an interpretation of the National Housing Act, which authorized the President "to create a Federal Housing Administration, all of the powers of which shall be exercised by a Federal Housing Administrator * * *". 12 U.S.C.A. § 1702. On June 30, 1934 the President created the Federal Housing Administration, thus authorized. On January 28, 1936,. by Executive Order No. 7280 (12 U.S.C.A. § 1702 note) the President validated and confirmed the creation of the Administration. The Administrator was by statute "authorized and empowered, upon such terms and conditions as he may prescribe, to insure banks, trust companies, personal finance companies, mortgage companies, building and loan associations, installment lending companies, and other such financial institutions, which the Administrator finds to be qualified by experience or facilities and approved as eligible for credit insurance, against losses which they may sustain as a result of loans and advances of credit, and purchases of obligations representing loans and advances of credit, made by them on and after the date of the enactment of the National Housing Act * * * in order to make ample credit available, for the purpose of financing alterations, repairs, and improvements upon urban, suburban, or rural real property, by the owners thereof or by lessees of such real property * * *". 12 U.S.C.A. § 1703.

"The Administrator is authorized and directed to make such rules and regulations as may be necessary to carry out the provisions of this title." 12 U.S.C.A. § 1715b. Regulation 10 provides for the furnishing of credit statements by the borrower to the *lending institution*. Emphasis by the Court. Regulation 12 provides that "if a note on its face complies with the requirements, and the credit statement reveals the other facts necessary to make the loan eligible, these may be accepted as final and conclusive proof of eligibility * * * by the Administrator". The other regulations set forth the conditions for making loans by the loaning institutions so authorized, and the conditions under which the loaning institution present claims to the Government.

At all times herein, the American Trust Company had a contract with the Federal Housing Administrator, whereby the American Trust Company was insured against losses which the said Company might sustain as a result of loans and advances of credit and purchases of obligations representing loans and advances of credit made under the terms of Title I· of the National Housing Act, 12 U.S.C.A. § 1703.

In considering the motion for a summary judgment, we find that Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides: "A party seeking to recover upon a claim * * * , at any time after the pleading in answer thereto has been served [may] move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof."

The pleadings and affidavits show that the defendants sought to buy a "Universal Neon Sign" from the Universal Neon Sign Company. On October 28, 1935, the defendants drafted a credit statement on United States Government Printing Office Form 16—4123, for "the purpose of inducing you to grant credit under the provisions of Title I of the National Act". The credit statement was addressed to the Universal Sign Co., Inc., but provided: "We authorize you or any financial institution to which you may desire to offer my (our) note for sale, to obtain such information as you (they) may require concerning the above statement and agree that it shall remain your (their) property whether or not my (our) note is finally accepted by you. I (we) certify that if the loan is granted to me (us) or my (our) note purchased, the entire proceeds will be used exclusively in payment for alterations * * *". The credit statement designated and described the property sought to be purchased by the loan.

On or about October 28, 1935, the credit statement was submitted to the American Trust Company, who approved the credit statement for a loan.

On November 4, 1935, the Lewins signed a conditional sales contract with the Universal Neon Sign Company "for equipment sold and installed under the terms of the National Housing Act" and on the same day they signed a promissory note to the said Company for $423.35, payable $11.77 monthly beginning December 4, 1935. A condition of the note was that "in case any installment of principal is not paid when the same becomes due, the whole of

said principal sum * * * and all unpaid installments thereof * * * become due". The promissory note is physically attached to the conditional sales contract, and on the margin of the note is printed in heavy black print, "Federal Housing Note". The conditional sales contract is headed "conditional sales contract for equipment sold and installed under the terms of the National Housing Act". The reverse side of the agreement and note contains this printed provision: "seller may assign this contract to American Trust Company without notice to purchaser, and when assigned shall be free from any defense, counter-claim or cross-complaint by purchaser".

On the same day, November 4, 1935, the note and conditional sales contract were assigned to the American Trust Company, which reported the same and qualified the loan under the terms of the National Housing Act.

After one monthly payment of $11.77 to the Trust Company, the Lewins defaulted in further payments. On September 18, 1936, upon the demand of the American Trust Company under the terms of the Housing Act, the Federal Housing Administrator paid the American Trust Company the $378.82 due and unpaid on the loan. The promissory note and conditional sales agreement were assigned to the Federal Housing Administrator. The Government is now suing the Lewins for the $378.82 which the Government paid the American Trust Company, upon the defendant's defaulted obligation.

█ The only defense raised by the defendants is an alleged failure of the Universal Neon Sign Company to meet the terms of the purchase agreement by failing "to deliver and install the * * * Neon Sign". In determining whether or not this could be any defense to the complainant's cause of action, we must recognize that all the facts show that the National Housing Act was considered a part of the agreement. When a statute exists giving special force and effect to a specific contract, the parties who enter into such a contract are held to assent to the force and effect attributed to it by such statute. Federal Land Bank v. Shingler, 174 Ga. 352, 162 S.E. 815.

█ In construing a contract, the Court must give effect to the intention of the parties as ascertained from a consideration of the entire contract, together with the circumstances under which it was made, the subject matter and the relationship of the parties. Nease v. Coal & Coke R. Co., D. C., 195 F. 987, certiorari denied, 232 U.S. 725, 34 S.Ct. 602, 58 L.Ed. 816; Good Humor Corp. of America v. Popsicle Corp. of United States, D.C., 59 F.2d 344, affirmed, 3 Cir., 66 F.2d 659.

This is not the ordinary transaction between a maker and payee of a promissory note, with a purchase of the sales contract and note by an outside third party. In fact, no decided litigated case with similar facts has come to the attention of the Court. Instead of having a two party agreement, there is a four party agreement. We have the Lewins, who, without giving or offering security, wanted to purchase goods of the Universal Neon Sign Company. We have the American Trust Company of whom the loan is solicited by having presented to them the Lewins' credit statement. And we have the Federal Housing Administration, which was fostering such loans and by insuring the Federal Housing loans of the American Trust Company, made possible the unsecured loan by the Trust Company to the end that the transaction might be completed.

What, then, was the actual transaction? We find the Lewins' credit statement averring that the statement was given for the purpose of inducing credit under the provisions of the National Housing Act. The conditional sales contract stated it was for "equipment sold and installed under the terms of the National Housing Act". And the promissory note was titled "Federal Housing Note".

The affidavit of H. H. Christensen, an officer of the American Trust Company in charge of loans under the National Housing Act, states that "Leo and Mabel Lewin executed and submitted to the American Trust Company a credit statement for the purpose of securing a loan under the terms of Title I of the National Housing Act; that the credit statement was approved by the American Trust Company for a loan under the terms of Title I of the National Housing Act * * * ".

On form FHB—71 (b) approved by the Comptroller General of the United States on October 17, 1935, the American Trust Company made its "statement of Facts Relative to Losses on Defaulted Notes Insured under Title I, section 2, National Housing Act. [12 U.S.C.A. § 1703]. A copy is attached to the affidavit of Mr.

Christensen. Section J of the report, captioned "information about terms under which loan was made or note purchased" reads: "Proceeds paid to borrower * * $368.22." The work sheet, form FHE 7 (c) item (11) reads: "amount advanced by applicant" (Trust Company) "$368.22". These figures appear on the Trust Company's report on "insurance contract number 008 2 04 38 11402 of Leo & Mabel Lewin". The Lewins' note was for $423.-35; the "discount or interest deducted in advance" was $55.13, which leaves the amount advanced by the Trust Company —$368.22.

The Lewins in drafting the Federal Housing Loan credit statement did not look to the Neon Company for the loan, but to an institution authorized by the Act to make loans and thus facilitate sales and purchases of goods coming within the purview of the Housing Act. We have seen that the credit statement provided that: "we certify that if the loan is granted to * * * us * * * or * * * our note purchased, the entire proceeds will be used exclusively in payment for alterations". The credit statement of the Lewins was presented to the American Trust Company. The Company did loan the money, under the Act.

Whatever methods the parties to this agreement used in evidencing the agreement, only one set of facts appears from the complaint, answer and amended answer, affidavits, and the terms of the National Housing Act which was incorporated into the agreement. There was a National Housing Act loan by the American Trust Company to the Lewins, and payment of the money to the Universal Neon Sign Company for and in behalf of the Lewins, the purchasers.

And the only transaction between the Lewins and the American Trust Company was the loan of money. The only interest the American Trust Company, as the Federal Housing Loan institution, had in the use to be made of the money, was to assure itself that the borrower intended to use the loan for a purpose authorized as a basis for Federal Housing loans.

Therefore, the defendants raise no defense to the right of the American Trust Company to collect the unpaid amount of the loan, in contending that the Neon Company failed to live up to the sales agreement for which the money was borrowed.

What are the rights of the Government, under this agreement, and the facts as presented? The Lewins sought and obtained a National Housing Act loan. They thereby asked the Government, through the National Housing Administration, to insure the loan, so as to make the unsecured loan possible. They then agreed that if they defaulted, and the Government paid the lending institution the amount of the loan, they, the Lewins, would reimburse the Government. The facts show that the Lewins defaulted upon the payment of the Loan. Up to this stage, the right of the American Trust Company to collect the amount due on the loan is clear. But instead of suing the Lewins directly, the American Trust Company chose to rely upon the Government's part of the agreement to pay the amount of the defaulted loan. They demanded the payment by the Government, and the payment was made by the Government. The American Trust Company assigned the promissory note and conditional sales contract to the Government.

Thereupon there became effective the next part of the agreement, namely, the Lewins' agreement to reimburse the Government. The Government made demand upon the Lewins for repayment, which was refused.

It is clear that at the time the loan was made no one step in connection with the loan would have been taken without the concurrence of all the four party rights and obligations. It is also clear that the only transaction between the Lewins, the American Trust Company and the Federal Housing Administrator, was the loan of money. The only interest the Government had in the use of the money was to assure the Housing Administration that the borrower intended to use the loan for the purposes permitted by the Federal Housing Act. Therefore the defense raised by the defendants, the Lewins, to the effect that the Universal Neon Sign Company failed to perform its agreement, is no defense to the complainant's cause of action.

Therefore, the plaintiff's motion for summary judgment is granted. Let an order enter accordingly.