## Federal Intermediate Credit Bank v. Simpson's Administrator et al.

(Decided Nov. 1, 1935.)

WHEELER, WHEELER & SHELBOURNE for appellant.
L. R. SMITH and BENNETT & SMITH for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This appeal is prosecuted from a judgment of the Hickman circuit court (entered upon a verdict returned for appellee), dismissing the petition of the appellant, the Federal Intermediate Credit Bank, in which it sought to recover the sum of $500 and interest from J. W. Simpson, as maker of the note sued on, and the Arlington Agricultural Credit Corporation, as indorser of the note.

We have partially adopted the statement of facts, so far as they are undisputed, set out in appellant's brief, reciting that on March 26, 1931, for value received, J. W. Simpson executed his unsecured promissory note to the Arlington Agricultural Credit Corporation, a local loan Kentucky corporation, located at Arlington, Ky., in the sum of $500, due six months after date, with interest at 6 per cent. after maturity.

The Arlington Agricultural Credit Corporation for value received indorsed and transferred the note to the Federal Intermediate Credit Bank of Louisville (a corporation organized under the laws of the United States of America under the terms and provisions of the Federal Farm Loan Act, as amended 12 USCA sec. 1021 et seq.).

Before maturity of the note and while the note was in the possession of the Federal Intermediate Credit Bank of Louisville, Simpson gave Bogle, then the secretary-treasurer of the Arlington Agricultural Credit Corporation, a check in payment of his note, drawn upon the Bank of Arlington, of which the said Bogle was also then cashier. Simpson had sufficient funds then in the bank, according to its records, to pay the check, but at the time it was given the drawee bank was insolvent and not in position to pay the check, which fact Bogle testifies he knew at the time he received the check and gave Simpson receipt of payment of his note, which reads as follows:

"$500.00                              August 21, 1931.

"Received of J. W. Simpson Five Hundred and no/100 [$500.00] Dollars for note Number 15489.

"Arlington Agricultural Credit Corporation
"By A. B. Bogle, Secy-Treas."

The check of Simpson was never cashed nor forwarded to the Federal Intermediate Credit Bank of Louisville, nor has it ever received any payment in fact on this note.

On November 24, 1931, the Federal Intermediate Credit Bank of Louisville filed suit in the circuit court of Hickman county, Ky., against J. W. Simpson and the Arlington Agricultural Credit Corporation to collect Simpson's note. Shortly after suit was filed, but before service of process upon him, J. W. Simpson died. Thereafter, proof of claim was filed by the Federal Intermediate Credit Bank of Louisville with the personal representative of J. W. Simpson. Payment was refused by the administrator.

The Federal Intermediate Credit Bank, which we will hereinafter refer to as the plaintiff or credit bank, then amended its petition and made the administrator of Simpson's estate a party defendant.

The administrator filed answer, admitting the execution of the note, but denied its transfer to the credit bank before payment of the note, and pleaded payment of the note, before maturity, on August 21, 1931; further, that at the time of the payment of the note before its maturity date of September 26, 1931, the codefendant, the Arlington Agricultural Credit Corporation (whom we will hereinafter refer to as the credit corporation) was the agent of the credit bank and as such authorized to accept payment of said note on behalf of the credit bank, and did so accept payment of it.

To this reply was filed denying payment of the note, by reason of its attempted payment by check to Bogle before maturity, and also the agency of the defendant credit corporation to accept payment, and affirmatively alleged that the plaintiff credit bank was the owner and holder of said note in due course and that no part of same had been paid.

It appears that the check given by Simpson to the credit corporation was never credited by the drawee bank to the account of the credit loan corporation, nor was it ever received by the credit bank. Also, it is testified that the records of the drawee bank show no debit made to the account of Simpson for this check alleged drawn on it by Simpson to Bogle as secretary-treasurer of the credit corporation in payment of his note.

Subsequently, the credit bank amended its petition, setting out that a renewal note was given by Simpson for $500 on September 26, 1931, payable to the credit corporation, which was by it duly indorsed to the plaintiff credit bank. No part of the renewal note has been paid.

The credit bank also filed an amended reply setting up the renewal note and pleading that same was given by Simpson because of his knowing that the original note remained unpaid, and that his administrator was estopped to rely upon the receipt given by Bogle, purporting to evidence its payment.

Upon submission of the cause to the jury under instructions of the court, a verdict was returned for the defendant, upon which judgment was entered. Challenging the propriety of this judgment this appeal is prosecuted.

The main issues here involved, and which we are asked to review, are: Was the defendant credit corporation, for any purpose, the agent of the appellant credit bank, and if so, how was the agency created and what were its terms and provisions, and what was the scope of the agent's authority had thereunder? Or, that is to say, if the credit corporation can be held to have been the agent of the credit bank for any purpose, did its agency embrace the authority to collect and receive payment from Simpson, before maturity, of his note or to receive as absolute payment thereof Simpson's check therefor or his check where drawn, as here shown, upon a bank then insolvent, and so known to be by the alleged credit corporation agent receiving the same?

The facts, so far as pertinent to these issues, are that when the agents of the credit bank were attempting to organize the local defendant credit corporation in Hickman county, appellee's evidence is that they represented that the credit corporation, if and when organized, would be its agent to extend rural credit in the county, and that it would discount notes taken from its members by the credit corporation, which would become and be its agent and local representative for the collection and payment of such discounted notes held by it.

This testimony is, however, by the plaintiff bank denied, its witnesses testifying that no such representations were ever made nor any such claimed authority given to the credit corporation to act as agent for it or

to collect, as such, the notes discounted to it by the corporation—the possession of which it was shown was retained and at all times held by the credit bank.

The note here involved is by its terms made payable to the credit corporation, but payable at the office of the plaintiff credit bank in Louisville.

It is further testified by Bogle, as secretary-treasurer of the credit corporation, that he was as such officer authorized by the credit bank to collect and receive payment of the notes of its members discounted and indorsed by it to the credit bank; also, that he as such, had authority to receive payment from Simpson of his $500 note indorsed the credit bank, even when tendered some 35 days before its maturity or on August 21, 1931, the date Simpson attempted to pay it by check given Bogle therefor on the Bank of Arlington, of which he was then cashier and in which Simpson then had some $760 on deposit, even though at the time he knew that such drawee bank was insolvent and that it did not then have the funds with which it could honor the check.

The court, upon this evidence, instructed the jury in substance that if they believed from the evidence that the credit corporation had general or express authority, oral or written, of the credit bank to act as agent for the bank in collecting and receiving payments of the notes indorsed over to it, and that Bogle received Simpson's check for the amount of his note, drawn upon the bank while it was doing business and a going concern, and that payment of same was not refused by the bank when the check was in due course presented for payment, they would find for the defendant. Whereupon a verdict was by them returned for him.

These instructions are criticised as erroneous by the appellant bank, which we conceive presents for our consideration and disposition but the one question of whether or no, under the facts here shown, the credit corporation was the agent of the bank, and, even if so, was it authorized to receive payment of the note by Simpson in the way and manner it was here attempted?

The general and well-established rule is that even where the principal's agent is authorized to collect or receive payment of notes owned and held by the principal, the payor thereof can only properly make pay-

ment of same to an agent authorized to make collection for principal where the note is at the time in possession of the agent and delivery made of same when paid to him; also, that the payment must in each case be made in cash, or, if attempted to be paid by check, that same constitutes and is to be received but as a conditional payment, the validity of the purported payment to be determined upon the later payment of the check upon its due presentation to the drawee bank; also, that the authority of the agent to collect, where given him, is limited to receiving payment of the notes or securities intrusted to him for collection only when sought to be paid him upon their maturity.

However, in the case of Federal Land Bank v. Gaines, 290 U. S. 247, 54 S. Ct. 168, 78 L. Ed. 298, the question of the agency of a local farm loan association, as here, and its right to represent the Federal Land Bank, or an intermediate credit bank, was presented and determined adversely to the claim of an existing agency, the court holding that such farm loan corporation, composed of borrowers under the Federal Farm Loan Act, is in a general sense a public agency for carrying out the policy of the statute but that it does not act as the agent of the lending Federal Land Bank. Even if it is conceded that the credit corporation was here, notwithstanding this adverse holding of the court in the Gaines Case, under the applicable statute, or express authority given, the agent of the credit bank to the extent of receiving payment of its notes within the due and regular limits of the authority of such a collecting agent, that is, to collect the note at its maturity in cash or to receive check as only a conditional payment thereof, it must follow that the credit corporation, if such an agent, was the agent within such limits of the credit bank and it clearly became the agent of Simpson to the extent it attempted to act beyond the well-defined scope of its agency in receiving payment of its indorsee's note not then held in its possession for collection, from which it results that in going beyond such authority and accepting defendant's check, drawn upon his insolvent bank and received as payment of the note before its maturity, it must clearly be held to have acted as the agent of Simpson, and, therefore, its being admitted that the check was at the time given by Simpson to Bogle as the representative of the credit corporation and claimed agent of the credit bank, it did not consti-

tute a payment of the note to the bank, even though it should be found that due to the representations of its officers when organizing this credit corporation, it acted as the agent of the credit bank, as such agency would not extend beyond its proper and legal scope and boundary. Simpson was here, as maker of the note, the debtor of the credit bank upon the indorsement of the note over to it, and the credit corporation, by reason of its indorsement, became surety for its payment. Under these circumstances, such attempted spurious payment by Simpson of his obligation to his surety by worthless check given therefor cannot be said to satisfy the debt evidenced by the note held and owned by the credit bank.

Therefore, we are clearly of the opinion, for the reasons indicated, that the court erred, upon the showing here made of agency and alleged payment, in not giving the peremptory instruction moved for by appellant, and for such error committed its judgment must be, and it is, reversed, and the cause remanded for proceedings consistent with this opinion.