## Elbert et al. v. Louisville Trust Co.

(Decided May 22, 1936.)

H. B. JONES and H. O. WILLIAMS for appellants.

HENRY M. JOHNSON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Some time in 1922, and long prior thereto, the Consolidated Realty Company, a corporation, and its subsidiary and affiliated corporation, Hieatt Bros., were engaged in the real estate business in the city of Louisville, Ky., and which embraced all activities concerning real estate, including ownership of and dealing in it. Their

principal offices were in the city of Louisville, and the Consolidated Realty Company owned some office buildings, some residential apartments, and other real estate in the city, both improved and unimproved. At the same date and prior thereto one of the appellants and defendants below, T. F. Elbert, was engaged in the business of retail dealer in coal and operated his coalyard in the same city. He, with another similar dealer, furnished the Consolidated Realty Company practically all the coal that it needed in the operation of its real properties; the monthly purchases from him ran from three hundred to as much as six hundred dollars. In the year referred to, the Consolidated Realty Company, through its affiliated and subsidiary company, Hieatt Bros., contracted to sell to T. F. Elbert a residence lot in Marlowe place within the city at the price of $1,450, and further agreed to finance for him the building of a suitable residence thereon, the cost price of which, plus the consideration for the lot, amounted to something more than. $10,000. We gather from the record that, when the house was completed, Elbert, with his family, moved into it and he has occupied it as a residence continuously since.

Whether that contract was in writing or was a parol one is not disclosed, but it is clearly shown that it was. agreed between seller and purchaser that the latter should make payments of as much as $70 per month to be deducted from the monthly amount of his coal bill; it also being agreed that, as long as he furnished satisfactory coal at reasonable prices, the seller would contiue to patronize him. Under that arrangement, payments were made monthly on the balance of the principal and the accumulated interest from date of the purchase, and on February 15, 1928, the balance due the vendor from the vendee, after crediting all of such payments, was $7,624.86. No deed had been executed conveying the lot to Elbert up to that time, but on that date, pursuant to the terms of an agreement to refinance the purchase, the Consolidated Realty Company, at the direction of T. F. Elbert, executed a conveyance of the property to Margaret Elbert, the wife of T. L. Elbert,. and Oscar Elbert, his nephew. The balance due was. recited therein and the vendees agreed therein to (and did) execute their bonds for $7,000 of that balance, in fractional amounts due at stipulated dates, directly to

the Louisville Trust Company, trustee, and the remainder of $624.86 was evidenced by a note or a bond payable to the Consolidated Realty Company. That deed nowhere contained a stipulation that T. F. Elbert, the original purchaser of the lot and who made the payments thereon by coal deliveries in the manner above pointed out, should sign any of such bonds, but he did do so in conjunction with the vendees in the deed before any of them were delivered.

The deed retained a first lien on the conveyed property to secure the aggregate amount ($7,000) of the bonds issued to the trustee with a second lien securing the balance of $624.86 to the Consolidated Realty Company. The Louisville Trust Company bonds were made payable to it as trustee "or bearer," and on the face of each of them reference was made to the deed reserving the lien to secure their payment in this language, "The Covenants of the instrument securing this bond are made a part of same as though written herein." The payment of each of those bonds, by a writing on the back and made a part thereof, was guaranteed by the Consolidated Realty Company, and in that written guaranty it was stipulated that it, as guarantor, was also made the collector of the bonds for the trustee and the holder or holders thereof. The writing contained other stipulations relating to the duties of the holder, as well as the collector, with reference to the time for presentation for payment at the office of the Consolidated Realty Company and some other matters not material to the questions involved.

The deed incumbering the property with a vendor's lien to secure the bonds also contained a stipulation that the vendees would deposit "not less than $70.00 per month, beginning March 15, 1928, with the Consolidated Realty Company, Agents, which deposits shall be used to pay off the coupons and bonds above mentioned as they mature." The $7,000 worth of bonds were eventually transferred before maturity by the trustee to the present six distinct holders thereof. Following the date of the conveyance and the issuance of the bonds, T. F. Elbert continued to deliver coal to the Consolidated Realty Company, and at the end of each month he was issued a check by it for $70 covering the monthly payments. He would then indorse the check back to it as a credit on the sum total of his indebtedness covered by

the bond issue. The balance of his monthly accounts were settled, either by the receiving of cash or by accepting the notes of the Consolidated Realty Company and which he later discounted to the bank with which he did business. That course of dealing continued until 1932, when the Consolidated Realty Company was adjudged a bankrupt, followed by the appointment of a trustee in bankruptcy. That proceeding terminated the coal-purchasing transactions between T. F. Elbert and the bankrupt, as well as the latter's agency to make future collections on the bonds. At that time there was an unpaid balance of $4,375 of the $7,000 bond issue. This action was filed by the trust company, as receiver and trustee, against all of the Elberts—each of whom signed the bonds but only two of whom (Margaret and Oscar Elbert) were the vendees in the deed—to foreclose the vendor's lien for the balance due and for a sale of the property to satisfy that amount, as well as past-due taxes and subordinate liens that had been placed upon it.

The answer of the Elberts was in reality a set-off composed of the aggregate amount of unpaid notes that the Consolidated Realty Company had executed for coal between the date of the execution of the deed and the date of its bankruptcy, and which amounted to a sum slightly more than the unpaid balance of the bonds. It was also claimed by the Elberts in their pleadings that the amount estimated to be due on the date of the deed ($7,624.86), and which was recited therein as a consideration therefor, was in excess of the actual amount then due by several hundred dollars, and it sought credit by that excess, some of which was alleged to be usury, and the balance of which it was alleged was the result of mistakes and omissions in calculating the correct balance. Following pleadings made the issues and upon final submission, the court disallowed any of the interposed defenses and rendered judgment enforcing the lien for the amount claimed in the petition and its amendments and, to reverse it, appellants prosecute this appeal.

The briefs in the case take a wide range, and many of the points argued and discussed are, according to our view, irrelevant and immaterial, chief among which is a contention by counsel for the Elberts that the bonds are nonnegotiable and that plaintiff as trustee, as well as its later transferees and holders of the bonds, took them

subject to defenses that could be urged by the makers as against the Consolidated Realty Company, which sold to them the lot for which the debt was created. If counsel is correct in their contention that the bonds are not negotiable and that all defenses that could be made against a transferor of a nonnegotiable instrument are available to their clients, then the right of defendants to rely on their pleaded set-off against such transferor would be inescapable. But the trouble with that contention is that, regardless of the nature and character of the bonds as to negotiability, the Consolidated Realty Company was never the owner of the bonds, nor did it assign any of them to the Louisville Trust Company as trustee or other capacity, and the only obligation it assumed with reference thereto was as guarantor of their payment and an implied agreement to act as collecting agent of the monthly due payments thereon. There is no contention that any such collections made by it before its bankruptcy were not accounted for.

But, if it were otherwise, then any payments that may have been made to it as such collecting agent in any other manner than the reception of cash would not be binding on the trustee or the present bondholders, since an agent merely to collect is authorized to accept nothing but cash, and any other species of settlement or payment, including accord and satisfaction, is beyond his authority and not binding upon his principal. That general and well-established doctrine of the law is thus stated in the text in 2 C. J. 607, sec. 240: "And even where an agent is authorized to collect notes after their maturity, he has not the right to take anything save money in the payment of them, without express authority from his principal." The rule as so stated in that text was approved and applied by us in the cases of Woodruff v. American Road Machine Co., 65 S. W. 600, 23 Ky. Law Rep. 1551; Federal Intermediate Credit Bank v. Simpson's Adm'r, 261 Ky. 142, 87 S. W. (2d) 136. Prior ones to the Woodruff Case so holding are Smith v. Tieman, 1 Ky. Law Rep. 333, 10 Ky. Op. 765, Dohoney v. Lyon, 3 Ky. Law Rep. 249, 11 Ky. Op. 481, and Cummings v. Gerlick, 6 Ky. Law Rep. 509, an opinion by our former Superior Court.

Therefore it would seem that no unpaid notes or accounts for coal furnished to the realty company by the Elberts may be enforced against plaintiff herein,

even if none of them was accounted for by that company acting as collecting agent before its bankruptcy. However, no such unaccounted for collections appear in the record, and the only credit sought is in the nature of a counterclaim or offset composed of notes of the collecting agent, the right to rely on which is sought to be upheld because of a reference to the deed in the bonds and the incorporation of the obligations of the former into the latter. However, when that is done, it furnishes no authority for the Consolidated Realty Company to collect any part of the bonds or deferred payments of the purchase price of the real estate mentioned in any other manner than the reception of cash, and there is, as we conclude, no sufficient evidence in the record to show any other authority, even if it had been agreed to by parol between the vendor and vendee of the Elbert residence at any time during or following the negotiations for that trade.

The real and actual transaction by which plaintiff acquired the bonds was but a novation of the prior indebtedness of T. F. Elbert to the Consolidated Realty Company, whereby plaintiff, as trustee, became the owner of the balance of his purchase-money indebtedness up to the amount of its bonds, all of which were issued directly to it alone, and which was so expressed in the deed. The effect of the transaction was a borrowing of that amount of money from it by the Elberts and securing the amount so borrowed by incumbering their residence and paying the borrowed amount to the vendor. The method by which that was accomplished was the one we have hereinbefore stated; but the adoption of it cannot destroy its legal effect as indicated. Since, therefore, one dealing with an agent may not satisfy his obligation to the agent's principal by those from the agent personally to him, defendant's alleged offset is wholly unavailable as against plaintiff or any of the present bondholders. Likewise the same result follows from the novation of the debt to which we have referred, and which has the effect to destroy defendant's right to take credit by any alleged usury or mistakes in the balance estimated to be due on the date of the deed.

The judgment appealed from being in accord with our views, as so expressed, is affirmed.